# 24-855

United States Court Of Appeals For The Second Circuit

Montgomery Blair Sibley,
*Plaintiff/Appellant,*

vs.

Chauncey J. Watches, Kathleen Hochul, Letitia James, Steven G. James, Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph, Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman, *Defendants/Appellees.*

Appeal from the United States District Court
for the Western District of New York/Case No.: 19-CV-6517

## Reply Brief of the Appellant

Montgomery Blair Sibley
Plaintiff/Appellant
P.O. Box 341
Odessa, N.Y. 14869
(607) 301-0967
montybsibley@gmail.com

RECEIVED 2024 JUL 26 PM 3: 12 CLERK'S OFFICE U.S. COURT OF APPEALS

TABLE OF CONTENTS

| | |
|---|---|
| Table of Cases, Statutes and Other Authorities | ii |
| Summary of the Arguments | 1 |
| The Arguments | 1 |
| I. The Defendants Failed To Address Sibley's Core Arguments | 1 |
| A. Sibley's "Good Moral Character" Challenge | 2 |
| B. New York's Handgun License Application Adjudicative Practices Violate Due Process | 4 |
| C. Judge Geraci's May 18, 2020, Order Granting Defendants' Motion to Dismiss Was In Error | 4 |
| II. The Klu Klux Klan Act Erased Absolute Judicial Immunity | 7 |
| A. The Unfettered Scope Of The Ku Klux Klan Act | 7 |
| B. Title 42 United States Code §1983 Requires a Corrigendum | 10 |
| III. The Eleventh Amendment Is Inapposite As Sibley Sought Prospective Relief | 14 |
| A. Judge Geraci's, Order On The October 7, 2019 Verified Motion for Mandatory Preliminary Injunction "Rested On An Error Of Law" | 17 |
| B. Judge Geraci's Order On The December 10, 2019, First Amended Verified Complaint For Declaratory Judgment And Preliminary And Permanent Injunctive Relief "Rested On An Error Of Law" | 23 |
| IV. Judicial Institutional Integrity Requires This Court To Address Judge Geraci's Abuses of Discretion and Contemptuous Disregard of This Court's Mandate | 24 |

| Conclusion | 27 |
| --- | --- |
| Certificate of Compliance | 29 |
| 17 Stat. 13 (1871) | 30 |
| Verified Motion for Mandatory Preliminary Injunction, or, Alternatively, an Order to Show Cause | 31 |
| Appendix (Bound Separately) | |

### TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

| CASES | |
| --- | --- |
| | |
| *Antonyuk v. Chiumento*, 89 F. 4th 271 (2nd Circuit, 2023) | 6 |
| *Antonyuk v. James,* No. 23-910 | 2 |
| *Ivan Antonyuk, et al. v. Steven G. James, et al.,* Supreme Court Case No. 23-910 | 2 |
| *Bell v. Burson*, 402 U.S. 535, 542 (1971) | 22 |
| *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) | 22 |
| *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948) | 27 |
| *Cohens v. Virginia*, 19 U.S. 264, 6 Wheat. 264, 404 (1821) | 18 |
| *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) | 14 |
| *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965) | 9 |
| *Huminski v. Corsones*, 396 F.3d 53 (2nd Cir. 2004) | 13 |
| *In re Murchison*, 349 U.S. 133, 136 (1955) | 26 |

| | |
|---|---|
| *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 170 (1951) | 22 |
| *Kaur v. Holder*, 561 F.3d 957, 962 (9th Cir. 2009) | 21-22 |
| *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) | 25 |
| *Libertarian Party v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) | 15 |
| *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980) | 21 |
| *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) | 8 |
| *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2021) | 5, 6, 19, 24 |
| *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 503 (1982) | 8 |
| *Pierson v. Ray*, 386 U.S. 547, 559 (1967) | 8, 13 |
| *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) | 12 |
| *Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) | 21 |
| *United States v. $8,850*, 461 U.S. 555 (1983) | 20 |
| *United States v. Lee*, 106 U.S. 196 (1882) | 8 |
| *United States v. Rahimi*, 602 U. S. 15 (2024) | 2-3 |
| *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2nd Cir. 2001) | 15 |
| *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) | 22 |
| | |
| STATUTES AND OTHER AUTHORITIES | |
| | |
| 1 U.S.C. § 204(a) | 12 |
| 17 Stat. 13 (1871) | 10-11 |

| | |
|---|---|
| N.Y. Penal Law §400.00(4-a) | 20 |
| Alexander A. Reinert, *Qualified Immunity's Flawed Foundation,* 111 Calif. L. Rev. 201, 207 (2023) | 10 |
| Cong. Globe, 42d Cong., 1st Sess., App. 217 (1871) | 11 |
| *Ku Klux Klan: A History of Racism*, Southern Poverty Law Center | 7 |
| Supreme Court Rule 19 | 13 |
| FRAP Rule 30(a)(2) | 16 |

### SUMMARY OF THE ARGUMENTS

1.      The Defendants <u>failed</u> to address Sibley's core Second Amendment and Due Process arguments.

2.      The Klu Klux Klan Act <u>erased</u> the defense of Judicial Immunity.

3.      The Eleventh Amendment is <u>inapposite</u> as Sibley timely sought prospective relief which Judge Geraci denied and now is to be reviewed here for an abuse of discretion.

4.      Though of no benefit to Sibley, Judicial Institutional Integrity requires this Court to address Judge Geraci's abuses of discretion and contemptuous flouting-by-ignoring <u>this</u> Court's explicit mandate to Judge Geraci: "to consider in the first instance the impact, if any, of *Bruen* on Sibley's claims."

### THE ARGUMENTS

## I.    THE DEFENDANTS FAILED TO ADDRESS SIBLEY'S CORE ARGUMENTS

Before addressing the three (3) arguments raised in their Answer Brief by the Defendants/Appellees (hereinafter "Defendants"), it is worthwhile to observe what the Defendants chose to <u>ignore</u> in their Answer Brief.

### A.  SIBLEY'S "GOOD MORAL CHARACTER" CHALLENGE

The Defendants first <u>ignored</u> Sibley's argument that the now-clearly improper New York "good moral character" requirement as applied to Sibley

indisputably violated the Second Amendment. While the desire of the Defendants is to sweep under-the-rug this grotesque violation of Sibley's Second Amendment rights by New York, this Court is <u>now</u> under a mandatory injunction to do otherwise.

This Court in *Antonyuk v. James*, No. 23-910, affirmed most of New York's "Bruen response bill," sanctioning the requirement that carry license applicants demonstrate their "good moral character" to licensing officials despite *Bruen*'s rejection of discretionary "suitability" determinations. On Petition for Certiorari, in *Antonyuk v. James*, Supreme Court Case No. 23-910, one of the questions presented was: "Whether 'the people' must convince government officials of their 'good moral character' before exercising their Second Amendment right to bear arms in public." On **July 2, 2024**, the Supreme Court <u>granted</u> Antonyuk's Petition and remanded with instructions to <u>this</u> Court: "for further consideration in light of *United States v. Rahimi*, 602 U. S. ___ (2024)." Accordingly, this Panel is now under an <u>obligation</u> to follow that mandatory injunction from the Supreme Court in this matter as well.

In *United States v. Rahimi*, 602 U. S. 15 (2024), the Supreme Court held:

> Our analysis of the surety laws in *Bruen* also does not help Rahimi. In *Bruen*, we explained **that the surety laws were not a proper historical analogue for New York's gun licensing regime.** 597 U. S., at 55–60. **What distinguished the regimes, we observed, was that the surety laws**

2

"presumed that individuals had a right to . . . carry," whereas New York's law effectively presumed that **no** citizen had such a right, absent a special need. *Id.*, at 56 (emphasis added). Section 922(g)(8)(C)(i) does not make the same faulty presumption. To the contrary, it presumes, like the surety laws before it, that **the Second Amendment right may only be burdened <u>once</u> a defendant has been found to pose a credible threat to the physical safety of others.** *See ibid.* While we also noted that the surety laws applied different penalties than New York's special-need regime, we did so **only to emphasize just how severely the State treated the rights of its citizens.** *Id.*, at 57. But as we have explained, **our Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not.** (Emphasis added).

Here, one of the seminal issues on the instant appeal is whether the "good moral character" requirement as applied to Sibley by N.Y. Penal Law Section §400.00(1)(b) was unconstitutional as it violated the Second Amendment as articulated by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2021) and now *Rahimi*.

The Supreme Court has unfortunately once again had to make clear to <u>this</u> Court that absent some judicial finding of "**credible threat to the physical safety of others**" – notably <u>absent</u> in the instant case – New York may <u>not</u> <u>trespass</u> upon Sibley's right to "keep and bear arms" by imposing a "good moral character" discretionary finding before issuing a hand-gun license.

3

**B.** **NEW YORK'S HANDGUN LICENSE APPLICATION ADJUDICATIVE PRACTICES VIOLATE DUE PROCESS**

The Defendants also <u>ignored</u> the significant problems with New York's administrative handgun license application adjudicative practices premised upon N.Y. Penal Law §400.00 *et seq*. Those practices <u>denied</u> to Sibley: (i) the process to which he was Constitutionally "due" and (ii) equal protection.  To remind this Panel: Sibley's Second Claim alleged that: "Sibley did not have the opportunity to <u>review</u> the Sheriff's report on Sibley upon which Licensing Officer Watches expressly <u>relied</u> upon to make his determination to <u>deny</u> Sibley his pistol license as Licensing Officer Watches expressly <u>refused</u> to disclose that report to Sibley despite Sibley's request for that report." (Appendix, p. 175, ¶37).

**C.** **JUDGE GERACI'S May 18, 2020, ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WAS IN ERROR**

In the **May 18, 2020**, Decision And Order, Judge Geraci granted the Defendants' motions to dismiss. In that Order, Judge Geraci held:

1. All of Sibley's claims are dismissed with prejudice as to Defendant Allard. The Clerk of Court is directed to terminate Allard as a party.

2. Sibley's first and second claims are dismissed with prejudice as to Defendant Watches.

3. Sibley's first and second claims as to handguns are dismissed with prejudice as to all Defendants.

4. Sibley's third claim is dismissed without prejudice as to Defendants Watches, Baker, Cuomo, and Corlett.

5. Sibley's fourth and fifth claims are dismissed with prejudice as to all Defendants.

Sibley first focuses the attention of the Court on Judge Geraci's **May 18, 2020**, ruling that: "Sibley presents no reason for this Court to depart from its holding in *Libertarian Party* here. Accordingly, the Court finds that intermediate scrutiny applies to Sibley's challenge to N.Y. Penal Law § 265.01(1), and that §265.01(1) satisfies that standard. **Sibley's claim that strict scrutiny is required fails**. (Appendix, p. 68, emphasis added).

Of course, *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2021) made crystal clear that Sibley was <u>right</u> and Judge Geraci <u>wrong</u>. "If a 'core' Second Amendment right is burdened, courts apply 'strict scrutiny' and ask whether the Government can prove that the law is 'narrowly tailored to achieve a compelling governmental interest.'" *Id*.

Second, in Sibley's Third Claim for Declaratory Relief, Sibley sought a: "Declar[ation] that N.Y. Penal Law §400.00(1)(b) & (n) on their face and/or as applied are void-for-vagueness, facially overbroad, violate the equal protection and privileges or immunities guarantees of the First and Fourteenth Amendments and encourages and permits, as here, arbitrary and discriminatory enforcement." (Appendix, p. 35). Judge Geraci ruled that:

5

> Sibley challenges N.Y. Penal Law §§ 400.00(1)(b) and (n), which provide that "no license shall be issued . . . except for an applicant . . . (b) of good moral character . . . and (n) concerning whom no good cause exists for the denial of the license." He argues that these provisions are void for vagueness because they encourage arbitrary and discriminatory enforcement, are overbroad, and violate the First Amendment, the Equal Protection clause, and the Privilege and Immunities clause. All of these arguments fail." (Appendix, p. 69).[1]

Again, Judge Geraci was <u>wrong</u> as this Court recognized in *Antonyuk v. Chiumento*, 89 F. 4th 271 (2nd Circuit, 2023)("Thus, the Second Amendment does not tolerate a "may issue" licensing regime, like New York's former regime, that conditions the issuance of a concealed-carry license on a discretionary assessment of need or justification.")

Accordingly, Judge Geraci's dismissal of Sibley First Amended Verified Complaint was in error in this regard and this matter is due to be reversed and remanded. As such, recognizing the travesty of justice this six (6) year old case presents, this Panel is duty-bound to exercise its jurisdiction and direct that Defendant New York Licensing Officer Watches issue <u>forthwith</u> to Sibley his long-awaited pistol permit.

---

[1] "A final word on historical method: Strictly speaking, New York is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Bruen.* As such, Sibley was raising a Second Amendment challenge in his Third Claim.

## II.   The Klu Klux Klan Act Erased Judicial Immunity

The Fourth Department Defendants and the Court of Appeals Defendants first argue that: "The district court properly concluded that judicial immunity protected defendants, as state-court judges, from a federal lawsuit against them in their individual capacities." (Def. Answer Brief, p. 16). Judge Geraci and these Defendants are wrong.

In the Southern states after the Civil War, the rule of law in the South was missing-in-action. "Violence first flared in a rampage of whippings, tar-and-feathers raids and the use of acid to brand the letters 'KKK' on the foreheads of blacks, Jews and others they considered anti-American. Ministers, sheriffs, policemen, mayors and **judges** either ignored the violence or secretly participated. Few Klansmen were arrested, much less convicted." *Ku Klux Klan: A History of Racism*, Southern Poverty Law Center, page 18 (Emphasis added).[2]

### A.   The Unfettered Scope Of The Ku Klux Klan Act

In response to this Southern lawlessness, the Reconstruction Congress enacted the Ku Klux Klan Act of 1871, now *partially* codified at 42 U.S.C. §1983. That Reconstruction Congress wanted "to provide a remedy for the wrongs being

---

[2]      Retrieved from: https://www.splcenter.org/sites/default/files/Ku-Klux-Klan-A-History-of-Racism.pdf

perpetrated on Black folk." *See*: *Pierson v. Ray*, 386 U.S. 547, 559 (1967)

(Douglas, J., dissenting). The Ku Klux Klan Act imposes liability upon <u>any</u> person

who, acting under color of state law, deprives another of a federal right. Stated

another way, the statute guarantees "basic federal rights of individuals against

incursions by state power." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496,

503 (1982). As stated in *Mitchum v. Foster*, 407 U.S. 225, 242 (1972):

> The very purpose of §1983 was to interpose the federal courts
> between the States and the people, as guardians of the
> people's federal rights – to protect the people from
> unconstitutional action under color of state law, whether that
> action be executive, legislative, **or judicial.**" (Emphasis
> added, quotation marks and citation omitted).

Notably, the Ku Klux Klan Act created "a species of tort liability that on its face

admits of **no immunities.**" *Wyatt v. Cole*, 504 U.S. 158, 163 (1992)(Emphasis

added, quotation marks and citation omitted). In 1882, the Supreme Court in

*United States v. Lee*, 106 U.S. 196 (1882) explained why:

> No man in this country is so high that he is above the law. No
> officer of the law may set that law at defiance with impunity.
> All the officers of the government, from the highest to the
> lowest, are creatures of the law and are bound to obey it. It is
> the only supreme power in our system of government, and
> every man who by accepting office participates in its
> functions is only the more strongly bound to submit to that
> supremacy, and to observe the limitations which it imposes
> upon the exercise of the authority which it gives.

*Id.* at 220. As a judicially-created, common-law doctrine that defies this basic principle, judicial immunity is an <u>unconstitutional</u> error and it is time for this Court to correct this <u>aberration</u>. Judicial immunity was <u>neither</u> expressed <u>nor</u> implied in the text of the Ku Klux Klan Act.[3] Pointedly, it does <u>not</u> "help give . . . life and substance" to the "specific guarantees in the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965). <u>Diabolically</u>, judicial immunity has the opposite effect: It permits judicial actors, as demonstrated in the instant case, the

---

[3]     Mr. Justice Douglas, dissenting. "I do not think that all judges, under all circumstances, no matter how outrageous their conduct, are immune from suit under 17 Stat. 13, 42 U.S.C. §1983. The Court's ruling is not justified by the admitted need for a vigorous and independent judiciary, is not commanded by the common law doctrine of judicial immunity, and does not follow inexorably from our prior decisions. The statute, which came on the books as §1 of the Ku Klux Klan Act of April 20, 1871, 17 Stat. 13, provides that "every person" who, under color of state law or custom, "subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To most, "every person" would mean every person, not every person <u>except</u> judges. . . . The congressional purpose seems to me to be clear. A condition of lawlessness existed in certain of the States under which people were being denied their civil rights. **Congress intended to provide a remedy for the wrongs being perpetrated. And its members were not unaware that certain members of the <u>judiciary</u> were implicated in the state of affairs which the statute was intended to rectify. It was often noted that "[i]mmunity is given to crime, and the records of the public tribunals are searched in vain for any evidence of effective redress."** Cong.Globe, 42d Cong., 1st Sess., 374. Mr. Rainey of South Carolina noted that "[T]he courts are in many instances under the control of those who are wholly inimical to the impartial administration of law and equity." *Id.* at 394." *Pierson* at 559-560.

9

ability to avoid <u>any</u> consequence for their violation of a Citizen's right-to-petition and due process guarantees of the Constitution.

## B. TITLE 42 UNITED STATES CODE §1983 <u>REQUIRES</u> A CORRIGENDUM

Remarkably, when Congress enacted the Ku Klux Klan Act, it "adopted explicit text that displaced common law defenses," making clear "that such a claim would be viable <u>notwithstanding</u> 'any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary." Alexander A. Reinert, *Qualified Immunity's Flawed Foundation,* 111 Calif. L. Rev. 201, 207 (2023) (quoting *An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for Other Purposes*, 17 Stat. 13 (1871)). Professor Reinert reports that an unknown government official <u>omitted</u> this "notwithstanding" subordinate phrase from 42 U.S.C. §1983 when he "published the first compilation of federal law in 1874." *Id*. The <u>full</u> and <u>correct</u> version of the Klu Klux Klan Act reads as follows:

> CHAP. XXII.- An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes. Be it enacted by the Senate and the House of Representatives of the United States of America in Congress assembled, That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, ***any such law, statute,***

10

> ***ordinance, regulation, custom or usage of the State to the
> contrary <u>notwithstanding</u>***, be liable to the party injured in any
> action at law, suit in equity, or other proper proceeding for
> redress; such proceeding to be prosecuted in the several
> district or circuit courts of the United States, with and subject
> to the same rights of appeal, review upon error, and other
> remedies provided in like cases in such courts, under the
> provisions of the act of the ninth of April eighteen hundred
> and sixty-six, entitled "An act to protect all persons in the
> United States in their civil rights, and to furnish the means of
> their vindication", and the other remedial laws of the United
> States which are in their nature applicable in such cases.
> (Emphasis of the omitted text added).

*Forty-Second Congress*. Sess. I. CH. 22 1871.[4]  As such, the full version of the Klu

Klux Klan Act <u>erased</u> any defense of judicial immunity which is a "custom or

usage of the State."[5]

Importantly, as noted by Professor Reinert: "Congress made clear that

subsequent versions of the Revised Statutes can be taken only as '*prima facie*'

evidence of the law, which can be rebutted by pointing to the originally enacted

version, unless Congress has specifically adopted the codification as part of the

laws of the United States." *Reinert* at 237. Thus, when there is a conflict between

---

[4]     A copy from the Library of Congress is attached and was retrieved from:
https://maint.loc.gov/law/help/statutes-at-large/42nd-congress/session-1/c42s1ch22
.pdf

[5]     Senator Allen G. Thurman, speaking in opposition to Section 1 of the 1871
Act (what is now Section 1983) clearly understood that "custom or usage" was
equivalent to "common law.  Cong. Globe, 42d Cong., 1st Sess., App. 217 (1871).
*Reinert* at 235.

the law as codified and the Statutes at Large, the Statutes at Large control."[6] *Id.* at 237. Notably, while Congress has enacted into positive law some of the Titles in the United States Code, it has <u>not</u> enacted Title 42, which contains Section 1983[7].

In *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023)(Willett, J., concurring), Judge Willett stated in regards to the Klu Klux Klan Act that it erased any defense of judicial immunity and was a: "game‑changing argument . . . in this text‑centric judicial era when jurists profess unswerving fidelity to the words Congress chose." Judge Willett went on to state, it would "supercharge[] the critique **that modern immunity jurisprudence is not just atextual but <u>countertextual</u>**. That is, the doctrine does not merely complement the text – it brazenly <u>contradicts</u> it." *Id.* at 980‑81. (Emphasis added).

---

[6]    *See*: 1 U.S.C. § 204(a)("The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish *prima facie* the laws of the United States, general and permanent in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included: Provided, however, That whenever titles of such Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.").

[7]    "Of the 54 titles, the following titles have been enacted into positive (statutory) law : 1, 3, 4, 5, 9, 10, 11, 13, 14, 17, 18, 23, 28, 31, 32, 35, 36, 37, 38, 39, 40, 41, 44, 46, 49, 51, and 54. Titles that have not been enacted into positive law are only prima facie evidence of the law. In that case, the Statutes at Large still govern." Retrieved from: https://www.govinfo.gov/help/uscode#:~:text=Of%20the%2054%20titles%2C%20the,legal%20evidence%20of%20the%20law.

For this reason, the Defendants' citation to *Huminski v. Corsones*, 396 F.3d 53 (2nd Cir. 2004) is misplaced for in that matter this Court <u>incorrectly</u> based its decision upon an incorrect citation to the Klu Klux Klan Act which omitted the subordinate "notwithstanding" clause. *Id.* at 70, f/n #15. Accordingly, this Court is obligated to address its manifest error in the instant case.

Sibley obviously recognizes that in *Pierson v. Ray*, 386 U. S. 547, 554 (1967), the Supreme Court held: "We do not believe that this settled principle of law was abolished by §1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common law immunities. . . The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."

As detailed *supra*, Congress by inclusion of the "notwithstanding" subordinate clause in the Klu Klux Klan Act <u>clearly</u> did "abolish" judicial immunity. Understandably, this Court may be reluctant to contradict *Pierson v. Ray* in correcting its decision in *Huminski v. Corsones*. For that reason, Sibley **expressly** requests that this Court pursuant to Supreme Court Rule 19: "certify to [the Supreme] Court a question or proposition of law on which it seeks instruction for the proper decision of a case. The certificate shall contain a statement of the

13

nature of the case and the facts on which the question or proposition of law arises." That legal proposition would be whether the above-referenced holding of *Pierson v. Ray* is still viable given the omission of the "notwithstanding" subordinate clause error of 42 U.S.C. §1983 by the Supreme Court in its decision.

As in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), Sibley's primary complaint is that the courts have disregarded the Klu Klux Klan Act's authoritative text and used "raw judicial power" and a misunderstanding of the true text of the Klu Klux Klan Act to balance the rights of judges against the rights of Citizens to seek redress for Constitution violations. *Id.* at 268. As in *Dobbs*, judicial immunity "short-circuited the democratic process" and "necessarily declared a winning side" in the controversy of judicial liability for extra-Constitutional acts. *Id.* at 269.

Accordingly, Sibley's Ku Klux Klan Act claims against the Fourth Department Defendants and the Court of Appeals Defendants survive the claimed defense of absolute judicial immunity.

### III. THE ELEVENTH AMENDMENT IS INAPPOSITE AS SIBLEY SOUGHT PROSPECTIVE RELIEF

The Defendants' second argument is: "As the district court correctly concluded, the Eleventh Amendment barred Sibley's claims against the defendants in their official capacities. The Eleventh Amendment bars official-capacity claims

14

against state officials, including state-court judges, in federal court. *See Libertarian Party*, 970 F.3d at 122-23." (Def. Answer Brief, p. 21-22).

Notably, in *Libertarian Party v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), this Court affirmed the dismissal for the claims that sought damages, but opined that "the Eleventh Amendment does not bar a federal court, in adjudicating federal claims against state officials in any capacity, from granting prospective injunctive relief." *Id.* at 123.[8]

On appeal, Sibley seeks *de novo* review of Judge Geraci's denial of Sibley prospective relief motion for preliminary injunction. The standard for this Court's review of Judge Geraci's denial of that motion was stated in *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2nd Cir. 2001):

> When a district court is vested with discretion as to a certain matter, it is not required by law to make a particular decision. Rather, the district court is empowered to make a decision – of its choosing – that falls within a range of permissible decisions. A district court "abuses" or "exceeds" the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) . . .

Here, Sibley argues that Judge Geraci "abused his discretion" as his denial of Sibley's motion for preliminary injunction was based upon an "error of law". As such, Sibley's prayer for prospective relief still is viable as it is being reviewed by

---

[8]     Sibley has never sought damages against Defendant Defendant/Appellee Handgun Licensing Officer Chauncey Watches.

this Court. This proposition is supported by both a review of the chronological

sequence of events and the law as erroneously determined by Judge Geraci.

First, the timeline:

- **December 10, 2019,** First Amended Verified Complaint For Declaratory Judgment And Preliminary And Permanent Injunctive Relief. (Appendix, p. 24).

- **October 7, 2019**, Verified Motion for Mandatory Preliminary Injunction, or, Alternatively, an Order to Show Cause.[9] (D.E. #7)

- **October 25, 2019**, the Defendant Licensing Officer wrote Sibley stating: "As you know your concealed pistol permit application was denied subject to an evidentiary hearing. In preparation for your **January 10, 2020** hearing . . ." (Appendix, p. 31).

- **October 25, 2019**, Sibley files his Request for Preliminary Injunction Hearing. (D.E. #10).

- **November 8, 2019**, Sibley files his Motion to Expedite Hearing on the Motion for Preliminary Injunction (D.E. #14).

- **November 13, 2019**, Judge Geraci entered his Order stating: "Plaintiff's motion for an expedited hearing on his motion for preliminary injunction is Denied Without Prejudice. After reviewing Defendants' responsive submissions to the complaint and motion for preliminary injunction, the Court will determine whether a hearing is necessary and, if so, it will notify the parties of the hearing date." (D.E. #19).

---

[9] Though not included in the Appendix, pursuant to FRAP Rule 30(a)(2), Sibley attaches hereto the "Verified Motion for Mandatory Preliminary Injunction, or, Alternatively, an Order to Show Cause" found at D.E. #7. Although Sibley mailed this motion on **October 7, 2019**, as demonstrated by his proof of service attached to the motion, it was <u>not</u> docketed by the Clerk until **October 22, 2019**.

- **December 17, 2019,** Sibley files his Second Verified Motion For Mandatory Preliminary Injunction. (D.E. #23). The Clerk of the Court mis-identified this motion as "Motion for Miscellaneous Relief".

- **January 6, 2020,** Judge Geraci <u>denies</u> Sibley's motion for preliminary injunction. (Appendix, p. 49)

- **January 10, 2020,** an evidentiary hearing was held before Defendant Licensing Officer Watches at which: (i) the Defendant Licensing Officer refused to recuse himself and then made factual statements on the record but did not allow cross-examination of him, (ii) Sibley testified for an hour and (iii) introduced into the record 250 pages of Exhibits. (Appendix, p. 91).

- **March 9, 2020,** Defendant Licensing Officer Watches issued his Decision denying to Sibley a pistol license. In that Decision, Defendant Watches rested his <u>sole</u> reason for denying Sibley's Application that he **"has failed to demonstrate his good moral character."** (Appendix, p. 91).

- **May 18, 2020,** decision and order denying, *inter alia*, Sibley motion for preliminary injunction. (Appendix, p. 55)

Clearly, Judge Geraci's **January 6, 2020,** decision and order denying Sibley's motion for preliminary injunction and **May 18, 2020,** decision and order denying Sibley motion for preliminary injunction are due to be reviewed by this Court for "an error of law". Had those "errors of law" <u>not</u> been made, the relief afforded to Sibley would have been <u>prospective</u> and thus <u>outside</u> the constraints of the Defendants' claim of an 11th amendment bar.

17

### A. JUDGE GERACI'S, ORDER ON THE October 7, 2019 VERIFIED MOTION FOR MANDATORY PRELIMINARY INJUNCTION "RESTED ON AN ERROR OF LAW"

Turning first to the **October 7, 2019**, Verified Motion for Mandatory Preliminary Injunction, that motion raised three legal claims:

- N.Y. Penal Law §265.01(1) is not the least restrictive means available and thus is unconstitutional;

- N.Y. Penal Law §400.00 *et seq* violates Due Process constraints placed upon New York; and

- The "good moral character" and "no good cause exists for the denial of the license" requirements of N.Y. Penal Law §400.00 *et seq.* are void-for-vagueness, facially overbroad, and encourages and permits, as here, arbitrary and viewpoint-based discriminatory enforcement.

**October 7, 2019**, Verified Motion for Mandatory Preliminary Injunction, page 5.

In response, Judge Geraci entered his **January 6, 2020**, decision and order denying Sibley's **October 7, 2019**, Verified Motion for Mandatory Preliminary Injunction. Notably, in that decision and order, Judge Geraci ignored Sibley's first and third arguments completely. This alone, was an "abuse of discretion" by Judge Geraci warranting reversal and remand. *Accord*: *Cohens v. Virginia*, 19 U.S. 264, 6 Wheat. 264, 404 (1821)("With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution.")

As to the second Due Process point, Judge Geraci ruled: "Courts within this Circuit have held that because a New York State government official's issuance of a pistol permit is a discretionary act, an individual has no property interest in holding such a permit. . . . Thus, because Plaintiff does not have a protectable interest in obtaining a handgun license, his Fourteenth Amendment procedural due process claim is unlikely to be successful. (Appendix, p. 53, citations omitted).

Clearly, Judge Geraci's ruling on the due process claim was an "error of law" and thus an "abuse of discretion" because the Second Amendment <u>prohibits</u> "issuance of a pistol permit [as] a discretionary act". *Bruen,* at 16. As the Supreme Court made clear in *Bruen* the Second Amendment prohibits such a licensing scheme "because it grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense."[10]

Moreover, had Judge Geraci correctly applied the law regarding Sibley's due

---

[10]      "The Court's decision addresses only the unusual discretionary licensing regimes, known as "may-issue" regimes, that are employed by 6 States including New York. As the Court explains, New York's outlier may-issue regime is constitutionally problematic **because it grants open-ended discretion to licensing officials** and authorizes licenses only for those applicants who can show some special need apart from self-defense. Those features of New York's regime – **the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many "ordinary, law-abiding citizens."** Ante, at 1; see also *Heller*, 554 U. S., at 635. . . **New York's law is inconsistent with the Second Amendment right to possess and carry handguns for self-defense.** *Bruen,* at 16 (Emphasis added).

process claim, he would have been compelled to grant the relief requested.

Sibley's due process claim listed four due process violation:

- A 10 ½ month wait to have his application processed;

- The Defendant Licencing Officer engaging in an *ex parte* communications with Sibley's employer;

- A "secret" report upon which the determination to <u>deny</u> Sibley's application was made which the Defendant Licencing Officer <u>refuses</u> to reveal; and

- A decision to <u>deny</u> Sibley's application was made <u>before</u> Sibley was heard.

Singularly and collectively, this process <u>violated</u> Due Process guarantees. First, the 10 ½ month wait to determine whether to disqualify a "fundamental right" violates due process. While no court has apparently squarely addressed this issue in the context of a pistol permit application, the authority found in *United States v. $8,850*, 461 U.S. 555 (1983) is analogously applicable. The Supreme Court in *$8,850* provided for a balancing test consisting of four factors. The factors include: (i) "the length of the delay", (ii) "the reason the Government assigns to justify the delay", (iii) "the claimant's assertion of the right to a judicial hearing", and (iv) "whether the claimant has been prejudiced by the delay." *Id.* at 568-69.

In this instance, balancing these factors, there simply was <u>no</u> justification for a 10 ½ month delay. The response to a NCIS or New York's own fingerprint

background check is instantaneous.[11]  Sibley both claimed a right to a hearing and

was prejudiced by the delay as he is <u>without</u> his fundamental right to a handgun in

his home and abroad for self defense.

Second, Sibley was denied due process as the Defendant Hearing Officer

engaged in *ex parte* communication with Sibley's employer. "This requirement of

neutrality in adjudicative proceedings safeguards the two central concerns of

procedural due process, the prevention of unjustified or mistaken deprivations and

the promotion of participation and dialogue by affected individuals in the decision

making process." *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980).  Here, by

receiving *ex parte* information upon which his decision was based, the Defendant

Licencing Officer violated Sibley's due process rights.[12]

---

[11]      Indeed, N.Y. Penal Law §400.00(4-a) states in pertinent part: "Except upon
written notice to the applicant specifically stating the reasons for any delay, in each
case the Licencing officer shall act upon any application for a license pursuant to
this section within six months of the date of presentment of such an application to
the appropriate authority."  Sibley challenged this six month time frame as
violating due process.

[12]      *Accord*: *Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999)("The
introduction of new and material information by means of *ex parte*
communications to the deciding official undermines the public employee's
constitutional due process guarantee of notice (both of the charges and of the
employer's evidence) and the opportunity to respond. . . . It is constitutionally
impermissible to allow a deciding official to receive additional material
information that may undermine the objectivity required to protect the fairness of
the process. Our system is premised on the procedural fairness at each stage of the
removal proceedings").

Third, the receipt of "secret" information from the Steuben County Sheriff upon which the Defendant Licencing Officer based his decision to <u>deny</u> Sibley's application eviscerated the "notice" prong of Due Process. *Accord*: *Kaur v. Holder*, 561 F.3d 957, 962 (9th Cir. 2009)("Therefore, use of the secret evidence without giving Kaur a proper summary of that evidence was fundamentally unfair and violated her due process rights.")

Last, and most egregious of all, New York's handgun licensing procedure was constitutionally unfair. Plainly, "[T]he Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 170 (1951)(Frankfurter, J., concurring). Indeed, procedural due process rights encompass a pre-deprivation hearing "except in emergency situations". *Bell v. Burson*, 402 U.S. 535, 542 (1971). In *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) the Supreme Court explained that state actors may constitutionally skip a pre-deprivation hearing in favor of a post-deprivation hearing <u>only</u> in "extraordinary situations".

Here, the Defendant Licencing Officer decided to deny Sibley's pistol permit application <u>before</u> he heard Sibley and thus <u>deprived</u> Sibley of his Second Amendment right to possess a handgun in his home and abroad: (i) <u>without</u> a

hearing, (ii) upon a "one-sided determination of facts decisive of rights", and (iii) without allegations of an "emergency situation" or "extraordinary situation." As such, Sibley was <u>deprived</u> of the process to which he was due.

For failing to address two legal claims and erroneously as a matter of law deciding the due process claim, Judge Geraci's decision and order on Sibley's **October 7, 2019**, Verified Motion for Mandatory Preliminary Injunction was premised upon legal errors and as such was an "abuse of discretion" due to be reversed and remanded.

**B. JUDGE GERACI'S ORDER ON THE DECEMBER 10, 2019, FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF "RESTED ON AN ERROR OF LAW"**

Likewise, the **December 10, 2019**, First Amended Verified Complaint For Declaratory Judgment And Preliminary And Permanent Injunctive Relief alleged that: "New York's criminal ban on Sibley's handgun possession in his home and cane sword possession both in his home and in public on its face and as applied violates Sibley's: (i) Fundamental rights and (ii) Second Amendment to the Federal Constitution rights." (Appendix, p. 25).

In his **May 18, 2020**, decision and order denying the prospective preliminary injunctive relief sought by Sibley in the First Amended Verified Complaint, Judge Gerci first held: "Taking a different tack, Sibley also argues that N.Y. Penal Law

§265.01(1) violates the Second Amendment because it fails strict scrutiny. . . This argument fails. . . This Court has likewise previously determined that intermediate scrutiny is appropriate to analyze challenges to New York's handgun licensing laws and has found that the laws satisfy that standard. . . . Accordingly, the Court finds that intermediate scrutiny applies to Sibley's challenge to N.Y. Penal Law §265.01(1), and that §265.01(1) satisfies that standard. Sibley's claim that strict scrutiny is required fails" (Appendix, p. 66-68). As detailed *supra*, this holding by Judge Geraci is patently wrong: strict scrutiny applies.[13] When that strict scrutiny is applied, Sibley's challenge to §265.01 succeeds.

In sum, both the **January 6, 2020 and the May 18, 2020** decisions and orders contained manifest "errors of law" and thus those orders were an "abuse of discretion" by Judge Geraci mandating reversal and remand.

### IV. JUDICIAL INSTITUTIONAL INTEGRITY REQUIRES THIS COURT TO ADDRESS JUDGE GERACI'S ABUSES OF DISCRETION AND CONTEMPTUOUS DISREGARD OF THIS COURT'S MANDATE

Plainly, Sibley has little to gain from a ruling by this Court in Sibley's favor that Judge Geraci abused his discretion by: (i) refusing to rule upon Sibley's *in forma pauperis* petition for seventy-nine (79) days and then declaring that motion moot, (ii) the *ex parte* granting of an indefinite stay, and (iii) denying Sibley's

---

[13] "If a 'core' Second Amendment right is burdened, courts apply 'strict scrutiny' and ask whether the Government can prove that the law is 'narrowly tailored to achieve a compelling governmental interest.'" *Bruen*.

motion to recuse Judge Geraci. The damage to Sibley has been done and *tempus* has *fugit*.

The Defendants ask this Court to accept their argument that these claims regarding Judge Geraci's decisions and actions are "meritless". (Answer Brief, p. 27). To approve of the Defendants' argument is to expand the *armamentarium* of judicial discretion which would permit judicial actors to: (i) treat impoverished litigants differently than the well-heeled and (ii) ignore the duty to follow *stare decisis* and state the *ratio decidendi* of their ruling; both <u>without</u> consequence.

As to the first point, to <u>ignore</u> Judge Geraci's delay in determining Sibley's *in forma pauperis* petition for seventy-nine (79) days treats litigants differently depending upon their wealth as the latter gets instant access to court while the former has to wait, and wait, and wait for that same access. For this Court to look-away from this issue is to send a clear message: Wealthy litigants may be treated differently than impoverished litigants. Is that a message this Court wants to send?

As to the second point, Sibley raised to Judge Geraci in Sibley's Opposition to the Motion to Stay [D.E. #122] the Supreme Court case of *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). In *Landis* the Court stated: a "suppliant for a stay <u>must</u> make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work

damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." (Emphasis added). Notably, Judge Geraci <u>neither</u> acknowledged <u>nor</u> addressed this citation and continued the stay he had previously entered *ex parte*.

If a judge is allowed to <u>ignore</u> controlling precedent as it conflicts with a judge's <u>predetermined</u> outcome, the rule-of-law is lost as the constraints of *stare decisis* becomes only aspirational.

Third, given the history of this case, the recusal of Judge Geraci was – and is – warranted if not only doing justice but giving the "appearance of justice" is to be had. *Accord*: *In re Murchison*, 349 U.S. 133, 136 (1955)("But to perform its high function in the best way 'justice must satisfy the appearance of justice.'")

Finally, the Defendants failed to address Sibley's argument that Judge Geraci's <u>contemptuous</u> disregard of this Court's mandate from the prior appeal in this matter to address the *Bruen* "good moral character" issue upon remand. As a reminder, this Court remanded with the following instruction to Judge Geraci (which he ignored): "We remand the case to the District Court to **consider in the first instance** the impact, if any, of *Bruen* on Sibley's claims, which concern a different provision imposing a "good moral character" requirement on applications for both carry and at-home licenses. N.Y. Penal Law § 400.00(1)(b)." *Sibley v.*

*Watches*, Case 21-1986, D.E. #100, p. 3. (Emphasis added).

A review of Judge Geraci's **March 18, 2024**, Decision and Order granting Defendants' motion to dismiss the Fifth Amended Complaint reveals Judge Geraci ignored that mandate as he <u>failed</u> to consider *Bruen*. (Appendix, p. 210). "[T]his Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948).

For this Court to ignore Judge Geraci's disrespectful disregard of the mandate of this Court is to confirm that this Court's remand orders are <u>toothless</u>. In sum, singularly and collectively, the abuses of discretion are such that when reversed and remanded, this Court must order the recusal of Judge Geraci from this matter.

<h3 style="text-align:center">CONCLUSION</h3>

It was an abuse of discretion for Judge Geraci to refuse to rule upon and then declare moot Sibley's motion to proceed *in forma pauperis*.

It was an abuse of discretion for Judge Geraci to *ex parte* indefinitely stay this matter.

The "good moral character" requirement applied to Sibley by N.Y. Penal Law Section §400.00(1)(b) was unconstitutional.

New York's procedure for adjudicating applications for handgun licenses is devoid of due process and violates equal protection guarantees.

The Fourth Department and Court of Appeals Defendants Defendants violated Sibley's First and Fourteenth Amendment due process rights to "petition" and be "heard" and equal protection guarantees.

The requisite *de nono* review of the First, Third, Fourth and Fifth Amended Complaints in this matter by this Court establishes that Sibley properly plead causes of action in each Claim and had the proper parties for each Claim. Accordingly, the District Court's Orders of **May 18, 2020**, **November 16, 2020**, **July 21, 2021** and **March 18, 2024** dismissing Sibley's Complaints are due to be vacated and this matter remanded for expedited proceedings to secure Sibley's right to possess a handgun at home and abroad.

WHEREFORE, Sibley respectfully requests that:

1.    The decisions and judgments of the District Court be vacated *in toto* and reversed;

2.    That this Court declare that New York's handgun laws and adjudicative practices are procedurally and substantively unconstitutional as detailed herein; and

3.    That this case be remanded for further expedited proceedings.

Date: July 23, 2024          **MONTGOMERY BLAIR SIBLEY**
Plaintiff/Appellant
P.O. Box 341
Odessa, N.Y. 14869
(607) 301-0967
montybsibley@gmail.com


By: _____

            **MONTGOMERY BLAIR SIBLEY**

### CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(g) as this document contains **5,996 words**. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Google Docs in 14 point Times New Roman.


By: _____

            **MONTGOMERY BLAIR SIBLEY**

CHAP. XXII. — *An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress; such proceeding to be prosecuted in the several district or circuit courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April, eighteen hundred and sixty-six, entitled " An act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication"; and the other remedial laws of the United States which are in their nature applicable in such cases.

Sec. 2. That if two or more persons within any State or Territory of the United States shall conspire together to overthrow, or to put down, or to destroy by force the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States, or by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, or by force, intimidation, or threat to prevent any person from accepting or holding any office or trust or place of confidence under the United States, or from discharging the duties thereof, or by force, intimidation, or threat to induce any officer of the United States to leave any State, district, or place where his duties as such officer might lawfully be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or to injure his person while engaged in the lawful discharge of the duties of his office, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duty, or by force, intimidation, or threat to deter any party or witness in any court of the United States from attending such court, or from testifying in any matter pending in such court fully, freely, and truthfully, or to injure any such party or witness in his person or property on account of his having so attended or testified, or by force, intimidation, or threat to influence the verdict, presentment, or indictment, of any juror or grand juror in any court of the United States, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or on account of his being or having been such juror, or shall conspire together, or go in disguise upon the public highway or upon the premises of another for the purpose, either directly or indirectly, of depriving any person or any class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State from giving or securing to all persons within such State the equal protection of the laws, or shall conspire together for the purpose of in any manner impeding, hindering, obstructing, or defeating the due course of justice in any State or Territory, with intent to deny to any citizen of the United States the due and equal protection of the laws, or to injure any person in his person or his property for lawfully enforcing the right of any person or class of persons to the equal protection of the laws, or by force, intimidation, or threat to prevent any citizen of the United States lawfully entitled to vote from giving his support or advocacy in a lawful

April 20, 1871.

Any person under color of any law, &c. of any State, depriving another of any right, &c. secured by the Constitution of the United States, made liable to the party injured.

Proceedings to be in the courts of the United States.

1866, ch. 31.

Vol. xiv. p. 27.

Penalty for conspiring by force to put down the government of the United States, &c.;

or to hinder the execution of any law of the United States;

or to seize any property of the United States;

or to prevent any person from holding office, &c. under the United States;

or to induce any officer to leave the State, &c.;

or to injure him in person or property while doing, or to prevent his doing, his duty;

or to prevent any party or witness from attending court or testifying therein;

or to injure him for so attending or testifying;

or to influence the conduct of any juror;

or to injure any juror on account of his acts, &c.

Penalty for conspiring or going in disguise upon the public highway, &c. to deprive any person or class of equal rights, &c. under the laws;

or to prevent the State authorities from protecting all in their equal rights.

Penalty for conspiring to obstruct, &c. the

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Montgomery Blair Sibley,

Plaintiff,

vs.

Chauncey J. Watches, solely in his official
capacity as a New York Consolidated Laws,
Penal Law §265.00(10) Licencing Officer,

Defendant.
_____/

Case No.: 6:19-cv-06517-FPG

SIBLEY'S VERIFIED MOTION FOR MANDATORY
PRELIMINARY INJUNCTION, OR,
ALTERNATIVELY, AN ORDER TO SHOW CAUSE

Plaintiff, Montgomery Blair Sibley ("Sibley"), pursuant to the authority of 28 U.S.C.

§1746 and under penalty of perjury, respectfully moves this Court for preliminary mandatory

injunctive relief directing Defendant Chauncey J. Watches, solely in his official capacity as a

New York Consolidated Laws, Penal Law §265.00(10) Licencing Officer ("Defendant Licencing

Officer") to register Sibley's handguns and issue him a license to carry his handguns in the home

pending resolution of the issues raised in the instant Complaint. Alternatively, Sibley

respectfully requests that this Court issue an Order to Show Cause to the Defendant Licencing

Officer directing him to promptly show cause why Sibley's above request should not be granted,

and for grounds in support thereof states:

FACTUAL BACKGROUND

1.      On **July 18, 2018,** Sibley filed his State of New York Pistol/Revolver License

Application ("Application") with the Clerk of Steuben County. An un-executed copy of the

redacted-for-privacy Application and Receipt is attached hereto as Exhibit "A". Notably, Sibley,

though not required, disclosed the make, model and serial number of the two handguns in his

possession on the Application. Sibley's Application was referred to the Defendant Licencing

Officer for processing. The Application included Sibley's fingerprints which triggered a series

of background checks with the New York State Division of Criminal Justice Services, the

Federal Bureau of Investigation, and the New York State Department of Mental Hygiene which,

upon information and belief, all came back <u>negative</u> for any criminal or mental health history.

     2.     Five months later, on **December 28, 2018**, Sibley was interviewed in person by

Steuben County Deputy Sheriff McCoy regarding his Application. A few days later, Deputy

McCoy advised Sibley by telephone that he must either: (i) surrender his handguns to the Sheriff

or a licensed firearms dealer or (ii) remove the handguns from New York pending determination

of his Application. Deputy McCoy further advised that Sibley's possession of his handguns in

his residence was a crime pursuant to N.Y. Penal Law §265 *et seq*. Accordingly, Sibley removed

his handguns from New York.

     3.     On or about **March 8, 2019**, Sibley legally purchased a shotgun from a Federal

Firearms Licensee in New York after passing the requisite Federal NICS background check.

That shotgun remains in Sibley's possession in his home.

     4.     On or about **May 16, 2019**, the Defendant Licencing Officer *ex parte* contacted

Sibley's employer by telephone seeking information about Sibley's activities as a New York

Nuisance Wildlife Control Operator.

     5.     On **May 29, 2019 − three hundred fifteen (315) days or 10 ½ months** after

Sibley filed his application − the Defendant Licencing Officer sent Sibley a letter <u>denying</u> to

Sibley a Pistol/Revolver License.  In that letter, the Defendant Licencing Officer stated in pertinent part:

- That  the Defendant Licencing Officer had reviewed Sibley's application and "the investigation submitted by the Steuben County Sheriff's Department";

- "The basis for the denial results from concerns about your being sufficiently responsible to possess and care for a pistol";

- "[T]he Court is concerned that your history demonstrates that you place your own interest above the interests of society"

A copy of the Defendant Licencing Officer's **May 29, 2019**, letter is attached hereto as Exhibit "B".

On **June 14, 2019**, Sibley responded to the **May 29, 2019**, letter from the Defendant Licensing Officer stating in sum and substance:

- Requesting copies of all written investigation reports and/or objections from any police authority or person reported to the Defendant Licensing Officer;

- Requesting the sum and substance of any orally-communicated information received by the Defendant Licensing Officer regarding Sibley's application;

A copy of Sibley's **June 14, 2019**, letter is attached hereto as Exhibit "C".

In response, on **June 25, 2019**, the Defendant Licensing Officer wrote Sibley stating: "I have reviewed your requests for information and documents and find them to be without legal basis and therefore they are denied." A copy of the Defendant Licensing Officer's **June 25, 2019**, letter is attached hereto as Exhibit "D".

PLAINTIFF MONTGOMERY BLAIR SIBLEY MEETS
THE PREREQUISITES FOR ENTRY OF A
MANDATORY PRELIMINARY INJUNCTION

Where a party seeks a preliminary injunction to stay government action taken in the

public interest pursuant to a statutory or regulatory scheme, "that party must show a likelihood of

success on the merits and irreparable harm". *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.

1996)(quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

I.      THERE IS A LIKELIHOOD THAT SIBLEY WILL HAVE SUCCESS ON THE MERITS

Sibley's Second Amendment <u>right</u> to possess a handgun in his home for self defense is

now black-letter law due to the holdings of *District of Columbia v. Heller*, 554 U.S. 570 (2008)

and *McDonald v. Chicago*, 561 U.S. 742 (2010)[1].  In *Heller*, the Supreme Court was

unequivocable:

> In sum, we hold that the District's ban on handgun possession in the
> home violates the Second Amendment, as does its prohibition against
> rendering any lawful firearm in the home operable for the purpose of
> immediate self-defense.  Assuming that Heller is not disqualified from
> the exercise of Second Amendment rights, the District must permit him
> to register his handgun and must issue him a license to carry it in the
> home.

*Heller* at 683.  Here, through the action of N.Y. Penal Law §265.01(1)[2], New York has "banned"

– by criminalizing – possession of a handgun by Sibley in Sibley's home: *Heller* conditionally

<u>prohibits</u> such.  However, *Heller* did recognize that New York does have the "police power" to

---

[1]      "We therefore hold that the Due Process Clause of the Fourteenth Amendment
incorporates the Second Amendment right recognized in *Heller*." *Id.*

[2]      N.Y. Penal Law §265.01(1) states: "Criminal possession of a weapon in the fourth
degree: A person is guilty of criminal possession of a weapon in the fourth degree when: "He or
she possesses any [handgun]."

ban certain individuals from possessing handguns in their home when the Supreme Court stated

that certain individuals may be: "disqualified from the exercise of Second Amendment rights."

*Heller* at 683.

For three reasons, New York's statutory attempts to "disqualified" Sibley from exercising

his Second Amendment right in his home are <u>illicit</u>:

- N.Y. Penal Law §265.01(1) is <u>not</u> the least restrictive means available and thus is unconstitutional;

- N.Y. Penal Law §400.00 *et seq* violates Due Process constraints placed upon New York; and

- The "good moral character" and "no good cause exists for the denial of the license" requirements of N.Y. Penal Law §400.00 *et seq.* are void-for-vagueness, facially overbroad, and encourages and permits, as here, arbitrary and viewpoint-based discriminatory enforcement.

Accordingly, as Sibley is likely to succeed on the merits, this Court must issue the

requested mandatory preliminary injunction directing the Defendant Licencing Officer to

immediately restore Sibley's Second Amendment right to possess handguns in Sibley's home to

Sibley.

### A. N.Y. PENAL LAW §265.01(1) IS <u>NOT</u> THE LEAST RESTRICTIVE MEANS AVAILABLE AND THUS IS UNCONSTITUTIONAL

As a recent exercise of its police power has demonstrated, New York not only

criminalizes possession of a handgun in the home, but actively prosecutes those who are found

with a handgun in their home. *See: Elderly NY man kills repeat burglars, is charged for using

inherited gun, loses his home* ("A 64-year-old Deerfield homeowner was charged with illegal

firearm possession and <u>arrested</u> after he used a gun he'd inherited from his deceased father to kill

two repeat burglars. Then upon his release from jail a couple of days later, he found himself homeless because his house had been condemned.")[3]

By this suit, Sibley challenges as unconstitutional N.Y. Penal Law §265.01(1) as not being suitably tailored to serve a compelling state interest. *Accord*: *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969)("[I]n moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional.")

Importantly, the nature of the "right" at issues determines the standard of review the Court is bound to undertake. Here, without doubt, for this asserted Second Amendment right, that standard is: "heightened scrutiny"[4]. *Accord*: *Washington v. Glucksberg*, 521 U.S. 702, 721(1997)(Heighten scrutiny is accorded rights which are "deeply rooted in this Nation's history and tradition"); *Reno v. Flores*, 507 U.S. 292, 303 (1993)(Fundamental liberty interests must be "so rooted in the traditions and conscience of our people as to be ranked as fundamental"; *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989)("We have insisted not merely that the

---

[3]     Retrieved from:
https://www.bizpacreview.com/2019/06/09/elderly-ny-man-kills-repeat-burglars-is-charged-for-using-inherited-gun-loses-his-home-763069

[4]     Sibley is well aware of this Court's decision in *Libertarian Party v. Cuomo*, 300 F. Supp. 3d 424, 442 (W. Dist. of N.Y.) in which this Court held: "While NYS's firearms licensing laws implicate the core Second Amendment right, they do not substantially burden it." Here, respectfully, Sibley maintains that his case is *significantly* different than that the plaintiffs in *Libertarian Party v. Cuomo*. As such, the "heightened scrutiny" standard applies. Indeed, the circumstances described herein cannot support a conclusion that N.Y. Penal Law §400.00 *et seq.* is a "marginal, incremental, or even appreciable restraint on [Sibley] right to keep and bear arms" as he has been denied that right for an impermissible period of time and denied due process. *Id.* at 442.

interest denominated as a 'liberty' be 'fundamental' . . . but also that it be an interest traditionally protected by our society"); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (Fourteenth Amendment protects "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.")

In *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 253 (2d Cir. 2015), the Second Circuit adopted a two-step approach to assessing the constitutionality of firearm restrictions. For the first step, a court must determine whether the regulated weapons fall within the protections of the Second Amendment." *Id.* at 254-255. Clearly, Sibley's handguns meet the first step requirement by impinging upon Sibley's Second Amendment rights.

Second, a court "must determine and apply the appropriate level of scrutiny." *Id.* at 254. In *N.Y. State Rifle & Pistol*, the Second Circuit addressed laws banning possession of semiautomatic assault weapons and large-capacity magazines, holding that such laws did <u>not</u> violate the Second Amendment. In so doing the Court applied intermediate scrutiny. The first test in determining what level of scrutiny was appropriate was stated thus: "In determining whether heightened scrutiny applies, we consider two factors: (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Id.* at 259.

Here, Sibley's desires to possess his handguns in his home is indubitably the very "core" of the Second Amendment right recognized in *Heller*. Second, by criminalizing that "right" and providing process that lack due process to acquire a license to possess handguns in the home, New York has placed the ultimate severity on that "right". Accordingly some form of heightened scrutiny is appropriate.

Next, in determining whether heightened scrutiny or strict scrutiny applies, the Second

Circuit looked to whether the burden "constrain the Amendment's "core" area of protection." *Id.*

at 260. In finding that banning possession of semiautomatic assault weapons and large-capacity

magazines did <u>not</u> require strict scrutiny, the Court reasoned that:

> [N]umerous alternatives remain for law-abiding citizens to acquire a
> firearm for self-defense. We agree with the D.C. Circuit that "the
> prohibition of semi-automatic rifles and large-capacity magazines does
> not effectively disarm individuals or substantially affect their ability to
> defend themselves." The burden imposed by the challenged legislation
> is real, but it is not "severe."

*Id.* at 260. Here, the same <u>cannot</u> be said as New York has banned all handguns from possession

in the home by criminalizing such possession until a licencing procedure is compiled with which,

as demonstrated by Sibley herein, is akin to a complete ban without a scintilla of due process.

Accordingly, strict scrutiny is the appropriate level of analysis due in this matter.

Here, Sibley will assume *arguendo* that New York has a "compelling governmental

interest" as expressed in N.Y. Penal Law §400.00(1) in keeping handguns from: minors, felons,

fugitives, habitual drug users, non-U.S. citizens and the mentally ill. Yet N.Y. Penal Law

§265.01(1) is <u>not</u> "suitably tailored" to achieve this end; rather, N.Y. Penal Law §265.01(1)

criminalizes the <u>entire</u> adult population of 13 million plus in New York[5] <u>without</u> any prior notice

or an opportunity to be heard from possessing a handgun in their home for self-defense.

The Second Amendment, *Heller* and the requisite strict scrutiny this Court must afford

Sibley results in a very clear conclusion: Such a scheme by New York does <u>not</u> "advance[s] a

compelling state interest by the least restrictive means available." *Bernal v. Fainter,* 467 U.S.

---

[5]     The over 21 years of age population of New York State is 13,505,172. Retrieved from:
https://www.infoplease.com/us/comprehensive-census-data-state/demographic-statistics-235

216, 219 (1984). Notably, when applying the heightened scrutiny standard, the burden is on the

state rather than the challenger. *See: Johnson v. California*, 543 U.S. 499, 506 (2005)("[T]he

government has the burden of proving that racial classifications are narrowly tailored measures

that further compelling governmental interests.").

Plainly, here, a much less restrictive means to keep handguns from those who should not

possess them is available both at the Federal and State level. At the Federal level, anyone who

wishes to buy any gun from a federally licensed firearms dealer is subject to a background check

through the National Instant Criminal Background Check System ("NICS system"). The

questionnaire which precedes the background check includes 16 questions relating to the

background, drug use, and criminal history of the applicant. Then the applicant is checked

against the records of (i) criminal and mental health history, (ii) dishonorable military

discharges, (iii) unlawful immigration status, (iv) an open warrant, (v) a documented history of

domestic violence, and (vi) drug use.[6]

Likewise, Sibley submitted his fingerprints as part of his pistol permit application which

triggered a series of background checks with the New York State Division of Criminal Justice

Services, the Federal Bureau of Investigation, and the New York State Department of Mental

Hygiene which, upon information and belief, all came back for Sibley <u>negative</u> for any criminal

or mental health history.

Hence, New York has an organized and in depth much <u>less</u> restrictive means to keep

handguns from the hands of those who should not have them other than criminalizing the entire

population of New York though the action of N.Y. Penal Law §265.01(1). Accordingly, the

---

[6]     Notably, here, Sibley has passed the in depth investigation through the NICS system
when he purchased his shotgun in March 2019.

application of N.Y. Penal Law §265.01(1) to Sibley's possession of his handguns in his home
violates the Second Amendment. As such, there is a likelihood that Sibley will prevail upon the
merits of his claim to possess his handguns in his home for self defense.

### B. N.Y. PENAL LAW §400.00 *ET SEQ* VIOLATES DUE PROCESS CONSTRAINTS PLACED UPON NEW YORK

In order to "disqualify" Sibley from exercising his *Heller* rights in his home, New York
must <u>first</u> accord him due process – something it plainly has <u>not</u> done here. *Accord: Duncan v.
Louisiana*, 391 U.S. 145, 148 (1968)("The Fourteenth Amendment denies the States the power to
deprive any person of life, liberty, or property, without due process of law. In resolving
conflicting claims concerning the meaning of this spacious language, the Court has looked
increasingly to the Bill of Rights for guidance; many of the rights guaranteed by the first eight
Amendments to the Constitution have been held to be protected against state action by the Due
Process Clause of the Fourteenth Amendment.")

As detailed above, New York has <u>failed</u> to accord Sibley the process to which he is due:

- A 10 ½ month wait to have his application processed;

- The Defendant Licencing Officer engaging in *ex parte* communications with witnesses;

- A "secret" report upon which the determination to <u>deny</u> Sibley's application was made which the Defendant Licencing Officer <u>refuses</u> to reveal; and

- A decision to <u>deny</u> Sibley's application was made <u>before</u> Sibley was heard.

Singularly and collectively, this process <u>violates</u> Due Process guarantees. First, the 10 ½
month wait to determine whether to disqualify a "fundamental right" violates due process. While

no court has apparently squarely addressed this issue in the context of a pistol permit application, the authority found in *United States v. $8,850*, 461 U.S. 555 (1983) is analogously applicable. The Supreme Court in *$8,850* provided for a balancing test consisting of four factors. The factors include: (i) "the length of the delay", (ii) "the reason the Government assigns to justify the delay", (iii) "the claimant's assertion of the right to a judicial hearing", and (iv) "whether the claimant has been prejudiced by the delay." *$8,850* at 568-69. In this instance, balancing these factors, there simply is <u>no</u> justification for a 10 ½ month delay. The response to a NCIS or New York's own fingerprint background check is instantaneous.[7] Sibley both claims a right to a hearing and has been prejudiced by the delay as he is <u>without</u> his fundamental right to a handgun in his home for self defense.

Second, Sibley was denied due process as the Defendant Hearing Officer engaged in *ex parte* communications. "This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision making process." *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980). Here, by receiving *ex parte* information upon which his decision was based, the Defendant Licencing Officer has violated Sibley's due process rights.[8]

---

[7]     Indeed, N.Y. Penal Law §400.00(4-a) states in pertinent part: "Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the Licencing officer shall act upon any application for a license pursuant to this section within six months of the date of presentment of such an application to the appropriate authority." Sibley challenges this six month time frame as violating due process.

[8]     *Accord: Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999)("The introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond. . . . It is constitutionally

Third, the receipt of "secret" information from the Steuben County Sheriff upon which the Defendant Licencing Officer based his decision to deny Sibley's application eviscerated the "notice" prong of Due Process. *Accord: Kaur v. Holder*, 561 F.3d 957, 962 (9th Cir. 2009)("Therefore, use of the secret evidence without giving Kaur a proper summary of that evidence was fundamentally unfair and violated her due process rights.")

Last, and most egregious of all, New York's handgun licensing procedure is constitutionally unfair. Plainly, "[T]he Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 170 (1951)(Frankfurter, J., concurring). Indeed, procedural due process rights encompass a pre-deprivation hearing "except in emergency situations". *Bell v. Burson*, 402 U.S. 535, 542 (1971). In *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) the Supreme Court explained that state actors may constitutionally skip a pre-deprivation hearing in favor of a post-deprivation hearing only in "extraordinary situations".

Here, N.Y. Penal Law §400.00 *et seq.* and the Defendant Licencing Officer deprived Sibley of his Second Amendment right to possess a handgun in his home: (i) without a hearing, (ii) upon a "one-sided determination of facts decisive of rights", and (iii) without allegations of an "emergency situation" or "extraordinary situation." As such, Sibley has been deprived of the process to which he is due. Accordingly, there is a likelihood that Sibley will prevail upon the merits of his claim to possess his handguns in his home for self defense.

---

impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process. Our system is premised on the procedural fairness at each stage of the removal proceedings").

## C.  N.Y. PENAL LAW §400.00 *ET SEQ.* IS VOID-FOR-VAGUENESS, FACIALLY OVERBROAD, AND PERMITS, AS HERE, ARBITRARY AND DISCRIMINATORY ENFORCEMENT

The administrative scheme to issue pistol permits in New York is found at N.Y. Penal

Law, Part 4, "Administrative Provisions", §400.00 *et seq.* First, §400.00.1 sets the eligibility

requirements for licenses to carry and possess firearms[9]. Of the fourteen (14) mandatory criteria

of eligibility, twelve (12) are not disputed by Sibley.[10]

However, Sibley does challenge two provisions both facially – and as applied to him – as

being void-for-vagueness and encouraging arbitrary and discriminatory enforcement.[11] N.Y.

Penal Law §400.00(1) states that "No [firearm] license shall be issued or renewed except for an

---

[9]    N.Y. Penal Law §260.00(3). "Firearm" means (a) any pistol or revolver . . ."

[10]    N.Y. Penal Law §400.00(1): Is twenty-one years of age or older (N.Y. Penal Law §400.00(1)(a)); Has not been convicted anywhere of a felony or a serious offense or is not the subject of an outstanding warrant of arrest issued upon the alleged commission of a felony or serious offense (N.Y. Penal Law §400.00(1)(c)); Is not a fugitive from justice (N.Y. Penal Law §400.00(1)(d)); Is not an unlawful user of or addicted to any controlled substance as defined in section 21 U.S.C. §802 (N.Y. Penal Law §400.00(1)(e)); Is a U.S. Citizen who has not renounced his citizenship nor served in the Armed Forces (N.Y. Penal Law §400.00(1)(f),(g) & (h)); Has never suffered any mental illness (N.Y. Penal Law §400.00(1)(i)); Has not been involuntarily committed to a facility under the jurisdiction of an office of the department of mental hygiene nor has been civilly confined in a secure treatment facility (N.Y. Penal Law §400.00(1)(j)); Has not had a license revoked or who is not under a suspension or ineligibility order issued pursuant to the provisions of section 530.14 of the Criminal Procedure Law or section eight hundred forty-two-a of the Family Court Act (N.Y. Penal Law §400.00(1)(k)); Has not had a guardian appointed for him pursuant to any provision of state law, based on a determination that as a result of marked subnormal intelligence, mental illness, incapacity, condition or disease, he or she lacks the mental capacity to contract or manage his or her own affairs (N.Y. Penal Law 400.00(1)(m)).

[11]    In *Libertarian Party v. Cuomo*, this Court held: "Specifically, they state that Plaintiffs have not alleged factual or legal arguments to support an as-applied vagueness claim. *Id.* The Court agrees." *Id.* at 439. Here, by stark contrast, Sibley has pled in the Complaint the "as-applied" vagueness violation.

applicant": (i) "of good moral character" (§400.00(1)(b)) and (ii) "concerning whom no good

cause exists for the denial of the license." (§400.00(1)(c)).

In *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983), the Court stated:

> As generally stated, the void-for-vagueness doctrine requires that a
> penal statute define the criminal offense with sufficient definiteness that
> ordinary people can understand what conduct is prohibited and in a
> manner that does not encourage arbitrary and discriminatory
> enforcement. . . Although the doctrine focuses both on actual notice to
> citizens and arbitrary enforcement, we have recognized recently that the
> more important aspect of the vagueness doctrine "is not actual notice,
> but the other principal element of the doctrine – the requirement that a
> legislature establish minimal guidelines to govern law enforcement. . .
> **Where the legislature fails to provide such minimal guidelines, a
> criminal statute may permit "a standardless sweep [that] allows
> policemen, prosecutors, and juries to pursue their personal
> predilections."** (Citations omitted, emphasis added).

First, both terms are so vague and standardless that they "leaves the public uncertain as to

the conduct it prohibits . . . ." and as such fail to meet the requirements of the Due Process

Clause. *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-403 (1966). Patently, New York does <u>not</u>

define "good moral character", nor could it. Once the definition leaves the defined areas of

"immoral behavior" codified in the criminal law, the term "good moral character" becomes

impossible to define because the definition is "viewpoint-based". Indeed, the Supreme Court

recognized this very problem in a Lanham Act case:

> So the key question becomes: Is the "immoral or scandalous" criterion
> in the Lanham Act viewpoint-neutral or viewpoint-based? **It is
> viewpoint-based**. The meanings of "immoral" and "scandalous" are not
> mysterious, but resort to some dictionaries still helps to lay bare the
> problem. When is expressive material "immoral"? According to a
> standard definition, when it is "inconsistent with rectitude, purity, or
> good morals"; "wicked"; or "vicious." *Webster's New International
> Dictionary* 1246 (2d ed. 1949). Or again, when it is "opposed to or
> violating morality"; or "morally evil." *Shorter Oxford English*

14

44

*Dictionary* 961 (3d ed. 1947). So the Lanham Act permits registration of marks that champion society's sense of rectitude and morality, but not marks that denigrate those concepts. . . . There are a great many immoral and scandalous ideas in the world (even more than there are swearwords), and the Lanham Act covers them all. **It therefore violates the First Amendment**. (Emphasis added).

*Iancu v. Brunetti*, 139 S. Ct. 2294, 2019 U.S. LEXIS 4201(June 24, 2019, Decided). Likewise, requiring a citizen to exhibit "good moral character" in order to be eligible for a pistol permit allows the Defendant Licencing Officer to engage in "viewpoint-based" definition of "good moral character" which <u>violates</u> the First Amendment. What the good Defendant Licencing Officer may consider "immoral" about Sibley may well be considered "moral" to Sibley and others of his ilk.

Likewise, the phrase "concerning whom no good cause exists for the denial of the license" is similarly vague on its face and as applied as "no good cause" is equally as impossible to define without reverting to viewpoint-based decision making <u>prohibited</u> by the First Amendment.

For the above-stated reasons, Sibley is likely to prevail upon the merits of his claim to possess his handguns in his home for self defense.

## II. SIBLEY WILL SUFFER IRREPARABLE INJURY UNLESS THE INJUNCTION ISSUES

There is little need to belabor the irreparable injury prong. *Accord; Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)(quoting *Elrod v. Burns*, 427 U.S. 347, 373, (1976) (plurality opinion))("[T]he loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); 11A Wright, et al., *Federal Practice and Procedure* §2948.1 (3d ed. 2013)(HN52 "When an alleged deprivation of a constitutional right is

involved, most courts hold that no further showing of irreparable injury is necessary."). Here, the Second Amendment "constitutional right" that Sibley seeks to enforce is to possess his handguns in his home. New York, depriving him of that right by threat of criminal prosecution and an obtuse licencing procedure, is irreparably harming Sibley.

CONCLUSION

If a law has "no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional." *United States v. Jackson*, 390 U.S. 570, 581 (1968). Here, as Sibley: (i) is <u>not</u> a minor, felon, fugitive, habitual drug user, non-U.S. citizens and/or mentally ill, (ii) consents to registering his handguns and (iii) seeks presently only to possess those handguns in his home, this Court must find that N.Y. Penal Law §265.01(1) penalizes Sibley who only chooses to exercise his Second Amendment rights and as such is unconstitutional as applied to Sibley.

WHEREFORE, Sibley respectfully requests that this Court enter a preliminary mandatory injunction directing Defendant Licencing Officer to register Sibley's handguns and issue him a license to carry his handguns in the home pending resolution of the issues raised in the instant Complaint. Alternatively, Sibley respectfully requests that this Court issue an Order to Show Cause to the Defendant Licencing Officer directing him to promptly show cause why Sibley's above request should not be granted.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by Certified Return Receipt Requested U.S. First Class Mail this October 7, 2019, Defendant Chauncey J. Watches: 3 E. Pulteney Square, Bath, N.Y. 14810.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on October 7, 2019

_____
MONTGOMERY BLAIR SIBLEY
Plaintiff
189 Chemung Street
Corning, N.Y. 14830
(607) 301-0967
montybsibley@gmail.com

By: _____
Montgomery Blair Sibley

*INSTRUCTIONS: Print or type in black ink only*

| NYSID Number | | PPB 3 (Rev. 06/17) | **County of Issue** Steuben |
| --- | --- | --- | --- |
| License Number | | **STATE OF NEW YORK** **PISTOL / REVOLVER LICENSE APPLICATION** | **Expiration Date** |
| Date of Issue | | | |

| Last Name | | | | | | | | | | | | | | | | Suffix |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| S | I | B | L | E | Y | | | | | | | | | | | |

| First Name | | | | | | | | | | MI | Date of Birth – MM DD YYYY | NY Driver's License (or NY Non-Driver ID) No. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| M | O | N | T | G | O | M | E | R | Y | B | | |

| Gender | Social Security | Race | Height | Weight | Eyes | Hair | Citizen of U.S.A |
| --- | --- | --- | --- | --- | --- | --- | --- |
| M | | W | ft 6 in 0 | 190 | BLUE | GRAY | ☒ YES ☐ NO |

**Physical Address** (Street number, street name, apartment number, city, state, zip code)
189 CHEMUNG STREET, #3, CORNING, NY 14830

**Mailing Address** (if different from physical address)
SAME

| Primary Phone Number | Secondary Phone Number | Email Address MBSIBLEY@GMAIL.COM |
| --- | --- | --- |
| 607-301-0967 | | |

| Employed By MERIDIAN BIRD REMOVAL | Present Occupation NUISANCE WILDLIFE CONTROL OPERATOR | Nature of Business NUISANCE WILDLIFE CONTROL |
| --- | --- | --- |

**Business Address** (Street number, street name, apartment number, city, state, zip code)
17 N Franklin St, Christiansburg, VA 24073

**I hereby apply for a Pistol / Revolver License to: (Check only one)** ☒ Carry Concealed ☐ * Possess on Premises ☐ * Possess / Carry During Employment

( * ) Premise Address or Employer Name and Address must be provided below:

| Employer Name (if Carry During Employment) MERIDIAN BIRD REMOVAL | Address or Other Location (Street number, street name, apartment number, city, state, zip code) 17 N Franklin St, Christiansburg, VA 24073 |
| --- | --- |

**A license is required for the following reasons:**
PERSONAL SAFETY AND FOR USE IN EMPLOYMENT WHEN I MUST DISPATCH WILDLIFE

**Give four character references who by their signature attest to your good moral character.**

| Last, First, MI | Street Address (Street number, street name, apartment number, city, state, zip code) | Signature |
| --- | --- | --- |
| Nicol, Kathleen | | |
| Schonberg, Rita | | |
| Siegel, John          607A | | |
| Solomon, Paul | | |

**Have you ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI (except traffic infractions)?** ☐ YES ☐ NO
If Yes, furnish the following information:

| Are you a fugitive from justice? | ☐ YES | ☒ NO |
| --- | --- | --- |
| Are you an unlawful user of or addicted to any controlled substance as defined in section 21 U.S.C. 802? | ☐ YES | ☒ NO |
| Are you an alien illegally or unlawfully in the United States? | ☐ YES | ☒ NO |
| Are you an alien admitted to the United States who does not qualify for the exceptions under 18 U.S.C. 922 (y)(2)? | ☐ YES | ☒ NO |
| Have you been discharged from the Armed Forces under dishonorable conditions? | ☐ YES | ☒ NO |
| Have you ever renounced your United States citizenship? | ☐ YES | ☒ NO |
| Have you ever suffered any mental illness? | ☐ YES | ☒ NO |
| Have you ever been involuntarily committed to a mental health facility? | ☐ YES | ☒ NO |
| Have you ever had a pistol / revolver license revoked? | ☐ YES | ☒ NO |
| Are you under any firearms suspension or ineligibility order issued pursuant to the provisions of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act? | ☐ YES | ☒ NO |
| Have you had a guardian appointed for you pursuant to any provision of state law, based on a determination that as a result of marked subnormal intelligence, mental illness, incapacity, condition or disease you lack the mental capacity to contract or manage your own affairs? | ☐ YES | ☒ NO |
| Are you aware of any good cause for the denial of the license? | ☐ YES | ☒ NO |
| Are you prohibited from possessing firearms under federal law, including having been convicted in any court of a misdemeanor crime of domestic violence or being under indictment for a crime punishable by imprisonment for a term exceeding one year? | ☐ YES | ☒ NO |

**If the answer to any of the questions above is YES, explain here:**

Exhibit "A"

**For applicants under twenty-one years of age only:**
Have you been honorably discharged from the United States Army, Navy, Marine Corps, Air Force or Coast Guard, or the National Guard of the State of New York?  ☐ YES  ☐ NO

---

| | |
|---|---|
| **Photograph Of Applicant Taken Within 30 Days**<br><br>———<br><br>**Full Face Only** | Knowingly providing false information will be sufficient cause to deny this application and constitutes a crime punishable by fine, imprisonment, or both. I am aware that the following conditions affect any license which may be issued to me:<br>1. No license issued as a result of this application is valid in the City of New York.<br>2. Any license issued as a result of this application will be valid only for a pistol or revolver specifically described in the license properly issued by the licensing officer.<br>3. If I permanently change my address, notice of such change and my new address must be forwarded to the Superintendent of the State Police and in Nassau County and Suffolk County, to the licensing officer of that county, within 10 days of such change.<br>4. Any license issued as a result of this application is subject to revocation at any time by the licensing officer or any judge or justice of a court of record. |

Jurat:
Signed and sworn to before me
This _____ day of _____ , 20 _____
at _____ , New York

_____       _____       _____
Signature of Applicant                              Signature of Officer Administering Oath                Title of Officer

### *APPLICATION NOT VALID UNLESS SWORN*

---

**Fingerprints submitted electronically by:**

Name _____   Rank _____   Organization _____

Date Submitted _____

---

**Investigation Report – All information provided by this applicant has been verified:**

Name _____   Rank _____   Organization _____

_____
Signature of Investigating Officer

---

**This application is  Approved – Disapproved (Strike out one)**      **The following restriction(s) is (are) applicable to this license:**

_____
Title and Signature of Licensing Officer

---

**If Licensing Officer authorizes the possession of a pistol, revolver or single shot firearm(s) at the time of issue of original license, furnish the following information:**

| Manufacturer | Pistol / Revolver / Single Shot | Model | Frame Only | Caliber(s) | Serial Number | Property Of |
|---|---|---|---|---|---|---|
| Ruger | Pistol | .22 cal auto pistol | ☐ | .22 | 14-62509 | Montgomery Sibley |
| Browning | Pistol | BDA .380 auto pistol | ☐ | .380 | 425PX04051 | Montgomery Sibley |
| | | | ☐ | | | |
| | | | ☐ | | | |

Duplicate of this application must be filed with the Superintendent of State Police within 10 days of issuance as required by Penal Law Section 400.00 SUBD.5.
This form is approved by Superintendent of the State Police as required by Penal Law section 400.00, SUBD. 3.



**STEUBEN COUNTY**
**COUNTY & FAMILY COURT**
**CHAMBERS**
**3 E. PULTENEY SQUARE**
**BATH NY 14810**

(607) 622-8192
Fax (607) 622-8241

Hon. Chauncey J. Watches
County and Family Court Judge

Vivian C. Strache, Esq.
Court Attorney

May 29, 2019

Mr. Montgomery Sibley
189 Chemung Street #3
Corning, NY 14830

RE:  NYS Pistol Permit Application

Dear Mr. Sibley:

Your application to obtain a pistol permit has been submitted to me for my consideration. I have reviewed your application and the investigation submitted by the Steuben County Sheriff's Department. The possession of a pistol permit license is a serious responsibility and a privilege. Therefore, the Court takes each application very seriously.

Your application for a pistol permit is denied. This decision is based upon concerns expressed in the Sheriff's investigation. The basis for the denial results from concerns about your being sufficiently responsible to possess and care for a pistol; the Court is concerned that your history demonstrates that you place your own interest above the interests of society

You do have the right to request a hearing with regard to the denial of your application. If you want a hearing you must submit a written request to the Pistol Permit Clerk within thirty (30) days of the date of this denial. The purpose of the hearing would be to allow you to testify and for you to present any other witness(es) that you believe could address the concerns mentioned in the foregoing and show that you should now be entitled to a pistol permit license. The County will also be able to present witnesses concerning the results of their investigation.

If after thirty (30) days, you fail to request a hearing, the denial will be deemed final.

Very truly yours,

Chauncey J. Watches
County Court Judge

CJW/rac

Exhibit "B"

50

# Montgomery Blair Sibley

189 Chemung Street
Corning, N.Y. 14830
607-301-0967
mbsibley@gmail.com

June 14, 2019

USPS Tracking #: 9590940241208092937555
Licensing Officer Chauncey J. Watches
3 E. Pulteney Square
Bath, N.Y. 14810

       Re:   *NYS Pistol Permit Application*

Greetings:

       I am in receipt of that certain letter dated May 29, 2019, from you in your capacity as a New York Consolidated Laws, Penal Law §265.00(10) Licensing Officer to me. I have this day requested a hearing from the Steuben County Pistol Permit Clerk in regards to the denial of my Pistol Permit Application; a copy of that request is attached hereto. Please note my new telephone number above for any telephonic communcations.

       Prior to advising you regarding my desired scheduling and duration of the above-referenced hearing, I am requesting from you copies of all written investigation reports and/or objections from any police authority or person reported to you as the §265.00(10) Licensing Officer purusant to NY CLS Penal §400.00(4). Additionally, please identify to me any orally communicated information you received regarding my application including, without limitation: (i) the name(s) and professional capacity of the reporting individual(s), (ii) the date and time of the report(s), (iii) the sum and substance of such report(s) and (iv) copies of any notes you made regarding the oral information you recieved in this regard. Finally, to the extent you consulted or were guided by any legal or educational authorities or State Administrative Procedure Act, §102(14) Guidance Documents or its like to process my application, please identify and provide copies of such documents.

       Within thirty (30) days of receiving this information from you, I will advise you on: (i) the time I will need to gather my evidence in response to the information you have received pursuant to NY CLS Penal § 400.00(4), (ii) the subpoenas and/or depositions I will be requesting from you pursuant to NY CLS St Admin P Act, §304(2), (iii) the number of witnesses I expect to call at the hearing, and (iv) consequently, the time I will be requesting for the hearing.

Yours,

Exhibit "C"

51



**STEUBEN COUNTY**
**COUNTY & FAMILY COURT**
**CHAMBERS**
**3 E. PULTENEY SQUARE**
**BATH NY 14810**

(607) 622-8192
Fax (607) 622-8241

Hon. Chauncey J. Watches
County and Family Court Judge

Vivian C. Strache, Esq.
Court Attorney

June 25, 2019

Montgomery Sibley
189 Chemung Street #3
Corning, NY 14830

RE: NYS Pistol Permit Application

Dear Mr. Sibley:

    I am in receipt of your letter dated June 14, 2019 concerning the denial of your application to obtain a pistol permit. Pursuant to your request I have scheduled a hearing on July 31, 2019 at 10:30 a.m. in Courtroom C at the Steuben County Courthouse, 3 E. Pulteney Square, Bath, New York. You should be prepared to proceed on that date with any evidence which you intend to present to the Court including testimony from you or any other witness concerning your application.

    I have reviewed your requests for information and documents and find them to be without legal basis and therefore they are denied.

Very truly yours,

Chauncey J. Watches
Steuben County Court Judge

CJW/rac

cc: Steuben County Pistol Permit Clerk

Exhibit "D"

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

Montgomery Blair Sibley,　　　　　　Case Number: 24-855

　　　　　　　　Plaintiff/Appellant,　　**CERTIFICATE OF SERVICE**

Vs.

Chauncey J. Watches, *et al.*

　　　　　　　　Defendants/Appellees.

_____/

I, Plaintiff/Appellant Montgomery Blair Sibley, hereby certify under penalty of perjury that on July 24, 2024, I served a copy of:

1. Appellant's Reply Brief;

2. Appellant's Motion for a Supreme Court Rule 19 Certification with Appellant's T-1080 form;

3. Appellant's Motion: (i) To Be Allotted Thirty Minutes To Argue and (ii) For Oral Argument In Western New York with Appellant's T-1080 form; and

4. Appellant's Oral Argument Statement.

by U.S. First Class Mail on: Jonathan Hitsous, Assistant Solicitor General, New York State Office of Attorney General, The Capitol, Albany, NY 12224-0341.

Date: July 24, 2024　　　　　　By:　　_____

　　　　　　　　　　　　　　　　　　**MONTGOMERY BLAIR SIBLEY**
　　　　　　　　　　　　　　　　　　Appellant
　　　　　　　　　　　　　　　　　　P.O. Box 431
　　　　　　　　　　　　　　　　　　Odessa, New York 14869
　　　　　　　　　　　　　　　　　　(607) 301-0967
　　　　　　　　　　　　　　　　　　montybsibley@gmail.com

1

ed delivery date specified for domestic use.

omestic shipments include up to $50 of insurance (restrictions apply).*

racking® included for domestic a

nternational insurance.**

sed internationally, a customs de

oes not cover certain items. For details r
at http://pe.usps.com.
ational Mail Manual at http://pe.usps.com

# LING ENVELO
## MESTIC AND INTERNATIO

edule free **Package Pickup**,
scan the QR code.



USPS.COM/PICKUP

## CKED ■INSURED



**UNITED STATES POSTAL SERVICE.** | *Retail*



**P**

### US POSTAGE PAID
## $14.35

Origin: 14869
07/24/24
3561050869-2

---

### PRIORITY MAIL®

5 Lb 7.50 Oz

**RDC 03**

EXPECTED DELIVERY DAY:   07/26/24

C099

SHIP
TO:



40 FOLEY SQ
NEW YORK NY 10007-1502

---

USPS TRACKING® #



9505 5143 7387 4206 2607 08



Montgomery Blair Sibley
PO Box 341
Odessa, NY 14869



Office of the Clerk
Second Circuit Court of Appeals
40 Foley Square
New York, NY 10007