UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Montgomery Blair Sibley,

            Plaintiff/Appellant,

vs,

Chauncey J. Watches, *et al.*,

            Defendants/Appellees.

_____/

Case Number: 24-855

**SIBLEY'S PETITION FOR PANEL RE-HEARING AND REHEARING *EN BANC***

Plaintiff/Appellant, Montgomery Blair Sibley ("Sibley"), pursuant to Federal Rules of Appellate Procedure, Rule 40 and Circuit Rule 40, petitions for Panel Rehearing or, alternatively, Rehearing *En Banc*, and for grounds in support thereof states:

**I.    PETITION FOR PANEL REHEARING**

The Panel has overlooked or misapprehended significant law and/or facts that, if this Panel is to "perform its high function in the best way justice must satisfy the appearance of justice"[1], then this Petition must be heard by

---

[1]     *In re Murchison*, 349 U.S. 133, 136 (1955).

1

acknowledging and addressing each issue raised herein. Otherwise this is nothing more than a *Potemkin* Court.

### A. THE FRAP RULE 28(J) ISSUE

Appellees filed their FRAP 28(j) letter on **August 21, 2025**. Sibley, as required by FRAP 28(j), "promptly" mailed off his response on **August 25, 2025**. (Sibley does <u>not</u> have CM/ECF filing privileges). On **September 5, 2025**, Sibley was notified by Case Manager Yenni Liu that his **August 25, 2025**, letter was just being processed and that he had until **September 9, 2025**, to file this Petition.

Yet this Panel, giving Sibley only four (4) days to respond, entered its Summary Affirmance on **August 26, 2025** <u>without</u> considering the contents of Sibley's Rule 28(j) response. Accordingly, this Panel is obligated to rehear and then address each of Sibley's Rule 28(j) response arguments. Otherwise, it will appear that Sibley has <u>not</u> been "heard" but rather given the bum's rush out of the Courthouse. *Accord*: *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'").

### B. THIS COURT'S IOP 32.1.1. SUMMARY ORDER IS <u>WITHOUT</u> AUTHORITY

Second, the **August 26, 2025,** Summary Affirmance is putatively authorized

by this Court's IOP 32.1.1. The Summary Order is <u>without</u> Congressionally granted authority and it deviates from the Federal Rules of Appellate Procedure.

As a starting point, this Court's *de facto* or *de jure* rules may <u>not</u> violate the Rules Enabling Act, 28 U.S.C. §2072(b)[2]. Notably, the Federal Rules of Appellate Procedure do <u>not</u> authorize a summary disposition of an appeal. As such, for this Court to have a non-published, summary affirmance rule procedurally violates FRAP Rule 47(a)(1) and substantively violates the Rules Enabling Act. FRAP Rule 47(a)(1) <u>mandates</u> that: "A local rule must be consistent with -- but not duplicative of -- Acts of Congress and rules adopted under 28 U.S.C. § 2072 . . .". As such, the practice of invoking a summary affirmance policy violates FRAP Rule 47(a) as it is not consistent with Constitutional constraints on this Court.

Here, under IOP 32.1.1 this Panel's Summary Order is <u>not</u> considered binding precedent. In *Marbury v. Madison*, 5 U.S. 137 (1803) the Supreme Court recognized that inherent in <u>every</u> judicial decision was a declaration and interpretation of the relevant general principles of law. "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that

---

[2] "Such rules shall not <u>abridge</u>, enlarge or modify any substantive right."

rule.": *Id*. at 177. Fundamental to this decision making process was that the enunciated law be <u>subsequently</u> applied to subsequently similarly situated litigants. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991)("But selective prospectivity also breaches the principle that litigants in similar situations should be treated the same, a fundamental component of *stare decisi*s and the rule of law generally.")

Indeed, this principle of reliance upon enunciated precedent is at the backbone of our legal system. As most eloquently stated by Justice Joseph Story, *Commentaries on the Constitution of the United States*, §377-78 (1983): "A more alarming doctrine could not be promulgated by any American court, than that it was at liberty to disregard all former rules and decisions, and to decide for itself, without reference to the settled course of antecedent principles."

Here, by invoking its improperly assumed power, the Summary Order is deemed, under IOP 32.1.1(a) to: "not have precedential effect."  Thus this Court impermissibly employs the very "alarming doctrine" of which Justice Story was justifiably concerned.  By designating the Summary Order as having no "precedential effect", this Court has permitted itself the ability to: (i) <u>ignore</u> its relevant prior "Summary" opinions in deciding the <u>instant</u> matter and (ii) <u>ignore</u> this Summary Order when a similarly situated matter occurs in the future.  Plainly,

4

such power violates the "fundamental component of *stare decisis* and the rule of law generally." *James B. Beam Distilling Co*. at 544.

Illuminating this point is the decision in *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000), *vacated* on other grounds, 235 F.3d 1054 (8th Cir. 2000) (*en banc*), where that court in addressing the constitutionality of its Rule 28A(i) – similar in effect to IOP 32.1.1 – held:

> Federal courts, in adopting rules, are not free to extend the judicial power of the United States described in Article III of the Constitution. *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992). **The judicial power of the United States is limited by the doctrine of precedent**. Rule 28A(i) allows courts to ignore this limit. If we mark an opinion as unpublished, Rule 28A(i) provides that is not precedent. . . . Rule 28A(i) expands the judicial power beyond the limits set by Article III by **allowing us complete discretion to determine which judicial decisions will bind us and which will not. Insofar as it limits the precedential effect of our prior decisions, the Rule is therefore unconstitutional.** (Emphasis added).

*Id*. at 905. Accordingly, Sibley maintains that this Court may have the power – but lacks the legal authority – to designate an opinion as "not hav[ing] precedential effect."

    C. THIS PANEL IGNORED SIBLEY'S ARGUMENT THAT THE KU KLUX KLAN ACT ERASED THE DEFENSE OF JUDICIAL IMMUNITY

Third, this Panel's Summary Order commenced its ruling stating: "We agree

5

with the district court that Sibley's claims were barred by the doctrine of Judicial Immunity." (Summary Order, p. 4). Yet Sibley argued extensively that the judicially-created "doctrine" plainly trespasses upon the Ku Klux Klan Act which created "a species of tort liability that on its face admits of **no immunities**." *Wyatt v. Cole*, 504 U.S. 158, 163 (1992)(Emphasis added, quotation marks and citation omitted).

This Panel's <u>refusal</u> to address the significant issue caused by the need of a *corrigendum* for 42 United States Code §1983 apparently relies upon the false belief that a court may <u>decline</u> to address issues it deems "without merit". Chief Justice Marshall would be mortified for his vision – and that of the Founders – that a court can become a legislature and decide what it will and will not address. Indeed, Justice Marshall deemed it "treason" to fail to decide a case within the jurisdiction of a court. In *Cohens v. Virginia*, 19 U.S. 264 (1821, Justice Marshall stated:

> The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, **we must decide it, <u>if it be brought before us</u>. We have no more right to <u>decline</u> the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions**

> **may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty. (Emphasis added).**

As such, this Panel is obligated to address the "missing" sixteen (16) words contained in the Ku Klux Klan Act but <u>not</u> found in 42 United States Code §1983. At least one appellate judge has found, "that modern immunity jurisprudence is not just atextual but countertextual. **That is, the doctrine does not merely complement the text [of §1983] – it brazenly contradicts it**." *Rogers v. Jarrett*, 63 F.4th 971, 980, 981 (5th Cir. 2023)(Willett, J., concurring). (Emphasis added).

Accordingly, this Panel is obligated to address the *corrigendum* for 42 United States Code §1983 and its impact upon the judicially-created doctrine of judicial immunity.

### D. THIS PANEL'S ARTICLE 78 CONCLUSION IGNORES THE FACTS OF THIS CASE

Fourth, the Panel concluded that: "[T]he district court correctly held that Sibley's Article 78 proceedings provided procedural due process to appeal the denial of his gun license permit." (Summary Order, p. 7). While the Panel's citation to *Locurto v. Safir*, 264 F.3d 154, 175 (2nd Cir. 2001) states the general rule that "An Article 78 proceeding . . constitutes a wholly adequate

7

post-deprivation hearing for due process purpose", it <u>fails</u> to address the facts raised by Sibley regarding <u>his</u> Article 78 proceeding. In particular, Sibley was not "heard" as the Fourth Department Defendants <u>refused</u> to address the procedural dues process issues raised by Sibley which included, *inter alia*, that the Licensing Officer received information about Sibley he obtained *ex parte* from the Steuben County Sheriff's Department which the Licensing Officer: (i) relied upon in denying Sibley's Application and (ii) refused to reveal to Sibley. (Appendix, p. 175, ¶26). This was no oversight error as Sibley again raised the refusal of the Fourth Department Defendants to acknowledge or address Sibley's significant claims in his Motion for Rehearing which the Fourth Department Defendants denied without detailing their *ratio decidendi* as requested by Sibley on July 9, 2021. (Appendix, p. 175, ¶26).

  Accordingly, this Court must reconcile that delta between what is presumed to happen in an Article 78 proceeding and that which actually <u>happened</u> in Sibley's Article 78 proceedings. Otherwise, the Fourth Department Defendants are now permitted to conduct an Article 78 hearing wearing noise-cancelling headphones so that they don't have to "hear" a litigant. Such a result is as absurd as saying New York may strip Sibley of his Second Amendment rights upon "secret evidence" not revealed to him as <u>indisputably</u> happened here.

8

To leave Sibley with no judicial avenue for recourse for New York's gross usurpation of Sibley's Second Amendment rights leaves Sibley with a right that has <u>no</u> remedy for its breach.

### E. THE PANEL'S IGNORED THE DISMISSAL OF THE NON-JUDICIAL DEFENDANTS

Last, Sibley properly raised the dismissal by the district court of the non-judicial defendants. Yet the Panel <u>ignored</u> those Defendants in its Summary Order. In particular, Sibley sued not only Appellee Watches but also Governor Cuomo, James L. Allard, Sheriff of Steuben County, Brooks Baker, District Attorney of Steuben County, and Keith M. Corlett, Superintendent of the New York State Police". (D.E. #5, Appendix 84). Those claims were dismissed by the District Court and thus are due to be re-instated as there was a "case or controversy" with those Appellees.

To fail to do so, recognizes that the plaintiffs in *New York State Rifle & Pistol Association, Inc. v. [Superintendent of the New York State Police] Bruen*, 597 U.S. 1 (2021) could proceed while Sibley's identical claims could not. Such a difference is due to be addressed by the Panel.

WHEREFORE, Sibley requests Panel rehearing on these issues.

9

## II. PETITION FOR REHEARING *EN BANC*

Sibley seeks Rehearing *En Banc* pursuant to FRAP 40(b)(2) as the proceeding involves three questions of exceptional importance and one of conflict with decisions of this Court and thus the full court's consideration is necessary to secure or maintain uniformity of the court's decisions.

### A. THIS PANEL'S SUMMARY ORDER <u>IGNORED</u> THE ISSUE OF THE EQUAL ACCESS TO COURT OF *IN FORMA PAUPERIS* PLAINTIFFS

Contemporaneous with the filing of the Initial Complaint on **July 9, 2019**, Sibley filed his motion to proceed *in forma pauperis*. **(Appendix. p. 2, D.E. #2)**. On **September 26, 2019,** as Judge Geraci had still <u>not</u> ruled for **seventy-nine (79) days** upon the *in forma pauperis* motion, and as Sibley was then finally able to come up with the exorbitant filing fee of four hundred ($400) dollars, he deposited the filing fee sum with the Clerk.

Dismissed as not warranting consideration as having no "merit", the Panel thereby explicitly approved this procedure which allows paying litigants to access court <u>immediately</u> while *in forma pauperis* litigants have to <u>wait</u>, and <u>wait</u> and <u>wait</u>. If this two-tier system of justice is acceptable in the Second Circuit, then deny this Petition for Rehearing *en banc* for this issue.

### B. THE DISTRICT COURT'S INDEFINITE STAY RAISES A QUESTION OF EXCEPTIONAL IMPORTANCE

On **December 13, 2022**, the district court <u>*ex parte*</u> issued an Order granting Defendants/Appellees Motion to Stay pending disposition of *Antonyuk v. Chiumento et al.*, No. 22-2908 (2nd Cir. 2023). **(Appendix, p. 209)**. In response Sibley cited to the District Court *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) in which the Supreme Court held:

> [T]he suppliant for a stay **must make out a <u>clear</u> case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in <u>rare</u> circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both**. (Emphasis added, citations omitted).

Notably, Judge Geraci <u>ignored</u> Sibley's citation to *Landis v. North Am. Co.* when denying Sibley's Opposition to the Defendants' Motion to Stay. **(Appendix, p. 15, D.E. #123).**

By <u>ignoring</u> this issue as having no "merit", the Panel has confirmed that when a Supreme Court case contradicts the *ex parte* ruling of a district court, the district court is free to ignore it, rending the concept of *stare decisis* an **aspiration**

11

rather than an obligation upon the lower courts. While the district court's stay and the holding of *Landis* may have been reconcilable, the failure of the district court and now the Panel to undertake that reconciliation is inexcusable. Hence, the question of the authority to deviate from *stare decisis* without *ratio decendi*, is one of exceptional importance warranting *En Banc* consideration.

### C. IT IS OF EXCEPTIONAL IMPORTANCE THAT TITLE 42 UNITED STATES CODE §1983 REQUIRES A *CORRIGENDUM*

Remarkably when Congress enacted the Ku Klux Klan Act, it "adopted explicit text that displaced common law defenses," making clear "that such a claim would be viable notwithstanding 'any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary." Alexander A. Reinert, *Qualified Immunity's Flawed Foundation,* 111 Calif. L. Rev. 201, 207 (2023). Professor Reinert reports that an unknown government official omitted this "notwithstanding" subordinate phrase from 42 U.S.C. §1983 when he "published the first compilation of federal law in 1874." *Id.*[3]

---

[3] The full and correct version of the Klu Klux Klan Act reads as follows: CHAP. XXII.- An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes. Be it enacted by the Senate and the House of Representatives of the United States of America in Congress assembled, That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United


While the panel determined that this argument was without "merit", at least one other appellate judge has deemed it the opposite.[4] This raises the issue of exceptional importance of the intellectual integrity of the judicial machinery which, as the Panel did here, reserves unto itself the ability to avoid issues it would rather not address for the Pandora's Box of litigation against Reconstruction judicial actors the Ku Klux Klan Act clearly intended. To so ignore is, as Justice Marshall put it, "judicial treason".[5]

---

States, shall, **any such law, statute, ordinance, regulation, custom or usage of the State to the contrary notwithstanding,** be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress; such proceeding to be prosecuted in the several district or circuit courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April eighteen hundred and sixty-six, entitled "An act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication", and the other remedial laws of the United States which are in their nature applicable in such cases. (Emphasis of the omitted text added). Forty-Second Congress. Sess. I. CH. 22 1871.

[4]    In *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023)(Willett, J., concurring), Judge Willett stated in regards to the Klu Klux Klan Act that it erased any defense of judicial immunity and was a: "game‑changing argument . . . in this text‑centric judicial era when jurists profess unswerving fidelity to the words Congress chose." Judge Willett went on to state, it would **"supercharge[] the critique that modern immunity jurisprudence is not just atextual but countertextual. That is, the doctrine does not merely complement the text – it brazenly contradicts it."** Id. at 980‑81. (Emphasis added).

[5]    In *Cohens v. Virginia*, 19 U.S. 264 (1821, Justice Marshall stated:
The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With

13

Obviously, the judiciary's authority comes from the adherence to *stare decisis* and the clear intellectual integrity underlying a decision. As is well known, judges possess neither army nor purse to enforce their decisions. Thus the decisions of Courts have legitimacy <u>only</u> when the opinions meet unimpeachable intellectual standards.

Here, the Panel has fallen <u>far</u> short of that intellectual standard by <u>ignoring</u> the corrigendum that §1983 requires. Stated another way, the Panel has concluded that it can <u>ignore</u> the plain language of the Ku Klux Klan Act because the U.S. Code incorrectly reproduced the text of the Ku Klux Klan Act. If an *En Banc* rehearing is denied, this new paradigm of enforcing mis-printed Congressional Statutes eviscerates the Rule of Law, leaving its bloody guts on the floor and the judicial system untethered from the will of the People expressed by their Representatives in Congress.

---

whatever doubts, with whatever difficulties, a case may be attended, **we must decide it, <u>if</u> <u>it</u> <u>be</u> <u>brought</u> <u>before</u> <u>us</u>. We have no more right to <u>decline</u> the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty. (Emphasis added).**

D.  THE PANEL'S SUMMARY ORDER CONFLICTS WITH *ANTONYUK V. CHIUMENTO ET AL.*, NO. 22-2908 (2ND CIR. 2023)

In *Antonyuk v. Chiumento* et al, the Plaintiffs sued Governor Hochul, the Superintendent of the New York State Police, the licensing official of Onondaga County; the District Attorney of Onondaga County and the Sheriff of Onondaga County among others. That case proceeded under 42 U.S.C. § 1983 and resulted in a significant opinion on the scope of Second Amendment rights.

Likewise here, Sibley, also proceeding under 42 U.S.C. § 1983, sued Governor Cuomo, James L. Allard, Sheriff of Steuben County, Brooks Baker, District Attorney of Steuben County, and Keith M. Corlett, Superintendent of the New York State Police". (D.E. #5, Appendix 84). Those claims were dismissed by the district court and affirmed by the Panel by its determination that Sibley's claims had no "merit".

Clearly, the holding of *Antonyuk v. Chiumento et al*. conflicts with the dismissal of Sibley's nearly identical claims against the <u>same</u> New York State actors. As such, an *en banc* rehearing is necessary to reconcile the conflict between this Court's holding in *Antonyuk v. Chiumento et al*. and the Panel's instant Summary Order <u>ignoring</u> Sibley's similar claims.

WHEREFORE, for the reasons aforesaid, Sibley petitions for Re-Hearing En Banc.

By: /s/ Montgomery Blair Sibley
**Montgomery Blair Sibley**
Plaintiff/Appellant
P.O. Box 341
Odessa, N.Y. 14869
(607) 301-0967
mbsibley@gmail.com

### Certificate of Service and FRAP 40(d)(3)(A) Compliance

I HEREBY CERTIFY that (i) a true and accurate copy of the foregoing will be sent via the Court's CM/ECF filing system when docketed by the Clerk to opposing counsel: Jonathan D. Hitsous, Assistant Solicitor General, New York State Office of the Attorney General, Division of Appeals & Opinions, The Capitol, Albany, New York 12224-0341 and (ii) as required by FRAP 40(d)(3)(A), I further certify that the Petition for Panel Re-Hearing and Rehearing En Banc complies with that rule as it contains 3,017 words, as calculated by Google Docs.

By: /s/ Montgomery Blair Sibley
**Montgomery Blair Sibley**